289 N.J. Super. 361 (1996)
674 A.2d 178
STATE OF NEW JERSEY IN THE INTEREST OF B.G., JUVENILE-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 1996.
Decided April 10, 1996.
*365 Bernadette N. DeCastro, Assistant Deputy Public Defender argued the cause for appellant (Susan L. Reisner, Public Defender, attorney; Ms. DeCastro, of counsel and on the brief).
James C. Lankford, Assistant Prosecutor, argued the cause for State of New Jersey (Sharon B. Ransavage, Hunterdon County Prosecutor, attorney; Mr. Lankford, and Marcia A. Crowe, Assistant Prosecutors, of counsel and on the brief).
Before SHEBELL, STERN and WALLACE, JJ.
The opinion of the court was delivered by SHEBELL, P.J.A.D.
B.G., a juvenile, appeals from his adjudication of delinquency for conduct that would have constituted second degree sexual assault if committed by an adult in violation of N.J.S.A. 2C:14-2b. The assault consisted of B.G.'s sexual contact, when he was 12 years old, with his stepbrother, J.B., who was four years and seven days younger than he. B.G. did not deny that contact occurred. His defense was that he did not do it with the conscious intent to gain sexual gratification or to degrade the victim. The Family Part judge disbelieved B.G. and his expert, who testified that the occurrence was only an impulsive act of an exploratory nature.
On December 15, 1994, B.G. was sentenced to three years of probation and sixty days of incarceration at the Warren Acres Detention Center, fifty days of which were suspended. Probation was conditioned on the juvenile's continued attendance at counselling sessions and school. The judge advised the juvenile of his obligation to register in accordance with the recently enacted *366 "Megan's Law." The juvenile's motion to prohibit disclosure of his identity to the public was denied.
On appeal, B.G. contends:

POINT ONE: THE OUT-OF-COURT STATEMENTS OF J.B. MADE TO DETECTIVE AYCOCK WERE NOT SUFFICIENTLY TRUSTWORTHY TO BE ADMITTED INTO EVIDENCE. (NOT RAISED BELOW).

POINT TWO: THE TRIAL COURT IMPROPERLY ADMITTED INTO EVIDENCE THE STATEMENTS MADE BY J.B. TO LINDA CIFELLI AND IMPROPERLY ADMITTED INTO EVIDENCE A DRAWING (S-6) WHICH J.B. MADE FOR THE PSYCHOLOGIST.

POINT THREE: THE FAMILY COURT JUDGE DENIED THE JUVENILE DUE PROCESS AND THE RIGHT TO COMPULSORY PROCESS WHEN SHE REFUSED TO ALLOW TRIAL COUNSEL TO CALL L.G. AS A WITNESS AND ORDERED THAT COUNSEL BE APPOINTED FOR L.G. TO ADVISE HIM OF HIS RIGHTS ALTHOUGH HIS MOTHER WHO WAS IN COURT HAD NO OBJECTION TO HIS TESTIFYING. U.S.CONST.AMEND. VI, XIV, N.J.CONST. (1947) ART. 1, ¶ 10.

POINT FOUR: B.G. WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BY HIS ATTORNEY'S FAILURE TO REQUEST A DETERMINATION ON THE ADMISSIBILITY OF THE VICTIM'S OUT-OF-COURT VIDEOTAPED STATEMENT AND STATEMENT TO THE PSYCHOLOGIST; HIS FAILURE TO REQUEST A MIRANDA HEARING ON THE ADMISSIBILITY OF THE JUVENILE'S OUT-OF-COURT STATEMENTS TO DET. AYCOCK; HIS FAILURE TO OBJECT TO THE STATE AND COURT'S LEADING QUESTIONS TO THE VICTIM AND FAILURE TO OBJECT TO THE USE OF A TURTLE TO DEMONSTRATE HOW THE ALLEGED SEXUAL CONTACT OCCURRED. U.S.CONST.AMENDS. VI, XIV, N.J.CONST. (1947), ART. I. PARAS. 1 AND 10.

POINT FIVE: IT WAS WHOLLY IMPROPER TO ALLOW THE STATE TO ELICIT TESTIMONY FROM THE VICTIM USING A TURTLE TO DEMONSTRATE THE ALLEGED SEXUAL ASSAULT AND TO ASK LEADING AND SUGGESTIVE QUESTIONS. (NOT RAISED BELOW).

POINT SIX: THAT PART OF THE JUVENILE'S DISPOSITION ORDERING HIM TO SERVE SIXTY DAYS AT WARREN ACRES WAS ILLEGAL BECAUSE THE CODE OF JUVENILE JUSTICE PROHIBITS THE INCARCERATION OF A DEVELOPMENTALLY DISABLED JUVENILE IN A CORRECTIONAL FACILITY. (NOT RAISED BELOW).

POINT SEVEN: THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AUTHORIZED DISCLOSING THIS JUVENILE'S IDENTITY TO THE PUBLIC. MOREOVER, N.J.S.A. 2A:4A-60 VIOLATES LONGSTANDING STATE AND FEDERAL POLICY DECISIONS REGARDING THE PRIVACY RIGHTS OF JUVENILE OFFENDERS. (PARTIALLY RAISED BELOW).

POINT EIGHT: MEGAN'S LAW AS APPLIED TO JUVENILES IS CONTRARY TO THE PHILOSOPHY OF THE JUVENILE CODE AND ITS APPLICATION *367 TO B.G. AND ALL OTHER JUVENILES IS VOID AND VIOLATES N.J.S.A. 2A:4A-47 AND 48.

POINT NINE: THE RETROACTIVE APPLICATION OF "MEGAN'S LAW" VIOLATES THE CONSTITUTIONAL PROSCRIPTIONS AGAINST EX POST FACTO LAWS AND DOUBLE JEOPARDY. (NOT RAISED BELOW).
A. MEGAN'S LAW REQUIRES SCRUTINY UNDER THE EX POST FACTO AND DOUBLE JEOPARDY CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS BECAUSE IT RETROACTIVELY IMPOSES REGISTRATION AND NOTIFICATION REQUIREMENTS.
B. "MEGAN'S LAW" VIOLATES THE DOUBLE JEOPARDY CLAUSES.

POINT TEN: "MEGAN'S LAW" MANDATES CRUEL AND UNUSUAL PUNISHMENT AS APPLIED TO THIS JUVENILE. (NOT RAISED BELOW).

POINT ELEVEN: THE REGISTRATION AND NOTIFICATION REQUIREMENTS OF "MEGAN'S LAW" IMPINGE ON B.G.'S CONSTITUTIONALLY PROTECTED PRIVACY AND LIBERTY INTERESTS WITHOUT DUE PROCESS. (NOT RAISED BELOW).
A detailed recitation of the facts is unnecessary as we find all of the juvenile's arguments to be without merit. R. 2:11-3(e)(2). We choose to comment only to the following extent.
In Point Three, B.G. claims that his right to compulsory process was denied when the court needlessly ordered counsel to be appointed for L.G. before the court would allow L.G. to testify on behalf of the defense. B.G. called his brother L.G. to testify on his behalf. Before L.G. could testify, the assistant prosecutor pointed out to the court that the State had not ruled out whether a complaint would be filed against L.G. concerning the events implicating L.G. in sexual assaults, and that if L.G. gave incriminating testimony it could be used against him. Counsel for B.G. suggested that since he was not L.G.'s lawyer, the boy should seek independent advice.
L.G.'s mother, also the mother of B.G., told the court that she had never been notified that L.G. could be charged. The court asked the mother if she wanted L.G. to testify and pointed out that she might want to talk to an attorney. The mother asked if she could talk to B.G.'s attorney, but the court explained that he could not be the attorney for both sons. After a short break, the court announced that it would be asking the Public Defender to appoint a pool attorney for L.G. If it was determined that L.G. *368 would testify, then the testimony would take place on the next scheduled trial date. Counsel for B.G. raised no objections to this procedure. On August 15, 1994 after the testimony of the defense expert, the defense rested. B.G.'s counsel noted that the attorney for L.G. had recommended that L.G. invoke his privilege against self-incrimination and so the defense would not be calling him.
Our Supreme Court has held that the privilege against self-incrimination is personal to the claimant and that its invocation must be exercised by the witness himself, on the stand and under oath, after hearing questions addressed to him. State v. Jamison, 64 N.J. 363, 375, 316 A.2d 439 (1974). While it is within a trial judge's discretion to apprise a witness of his privilege against self-incrimination, in a criminal trial that authority should be exercised sparingly and with great caution because of the paramount interest in the free flow of relevant information. Id. at 375, 316 A.2d 439; State v. Johnson, 223 N.J. Super. 122, 130-31 and n. 3, 538 A.2d 388 (App.Div. 1988), certif. denied, 115 N.J. 75, 556 A.2d 1218 (1989).
Based on the facts before the trial judge, the prospect that L.G. could be charged with a crime was not remote, unrealistic, or speculative. The prosecutor cannot be said to have raised this prospect without any basis for doing so, solely to prevent the boy from testifying. The evidence raised the possibility that L.G. had sexually assaulted B.G. and J.B. Further, there is no indication that anyone coerced or intimidated the witness into not testifying. The judge only attempted to insure that L.G. would be represented by an attorney before he testified. It was that attorney, and not the judge or the State, who advised the witness to assert his privilege against self-incrimination. Under these circumstances, we find no basis to attack the judge's handling of the matter. If L.G. had independently consulted with counsel earlier, the result would have been the same. The action of the judge cannot be said to require reversal in these circumstances.
In Point Four, B.G. argues that he was denied effective assistance of counsel because his trial attorney failed to object to the *369 out-of-court statements made by the victim; failed to challenge the admissibility of B.G.'s confession, and failed to object to the leading manner in which the prosecutor was allowed to elicit testimony from the victim at trial.
To prevail on an ineffective assistance of counsel claim, a defendant must show: (1) that his or her counsel's performance was deficient, i.e., that counsel made errors so serious as to be not functioning as the counsel guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense, i.e., that the errors were so serious as to deny a fair trial, resulting in an outcome that is suspect or unreliable. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693, reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); State v. Fritz, 105 N.J. 42, 52, 519 A.2d 336 (1987); see State v. Ferguson, 255 N.J. Super. 530, 538-39, 605 A.2d 765 (App.Div. 1992); N.J.S.A. 2A:4A-40. Thus, the focus is not solely on the final outcome, rather attention must be given to whether the result of the proceeding was fundamentally unfair or unreliable. Lockhart v. Fretwell, 506 U.S. 364, 368, 113 S.Ct. 838, 842, 122 L.Ed.2d 180, 189 (1993).
The juvenile claims that his attorney knew that he was neurologically impaired and suffered from attention deficit disorder and yet failed to move to suppress his statement. The evidence concerning B.G.'s neurological impairment came out during the testimony of B.G.'s expert. That expert expressed the opinion that the juvenile did not assault J.B. for the purpose of degrading the victim or for the purpose of sexually gratifying himself. No opinion was expressed that B.G. was incapable of understanding his rights or of knowingly and intelligently waiving them.
When considering the issue of waiver, we must look at the juvenile's age, experience, education, background, and intelligence. Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 2571-72, 61 L.Ed.2d 197, 212, reh'g denied, 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979). Here, B.G. does not deny that he signed a waiver, or that his mother was present when he signed the waiver. *370 She gave permission for the detective to speak with her son. Nor is it alleged that the confession was coerced in any way or that B.G. was too young to have understood his rights. B.G.'s allegation is that he was too neurologically impaired to have knowingly and intelligently waived his rights. When dealing with a juvenile of diminished mental capacity, the court must satisfy itself that the administering of constitutional rights was more than a mere perfunctory procedure. State v. Flower, 224 N.J. Super. 208, 214, 539 A.2d 1284 (Law Div. 1987), aff'd o.b., 224 N.J. Super. 90, 539 A.2d 1223 (App.Div. 1988).
The most that the record shows is that B.G. was a somewhat difficult child in terms of behavior, was socially immature, and that he was not a good student. His IQ was not below average. Both his chronological and his intellectual ages were twelve. He knew how to read and write and he appeared to have no difficulty answering questions posed to him. He voluntarily spoke to the detective and at no time has he asserted that the confession was coerced from him. We conclude that the confession was properly obtained and properly admitted into evidence. Therefore, even if counsel were to have moved to suppress the confession, he would not have ultimately prevailed.
B.G. asserts that his counsel was also ineffective because he failed to object to the leading and suggestive questions posed to J.B. by both the court and the assistant prosecutor, including the use of a toy turtle that was not anatomically correct. Clearly, certain questions were leading. However, substantial leeway is granted when witnesses of tender age, who may be reluctant to testify, are involved. J.B. was nine when he testified in court. He was held competent to testify and that determination has not been challenged on appeal. J.B. first claimed at trial that he could not remember what happened except that he had taken a bath. From that point on, J.B. was led to a considerable extent, not only by the assistant prosecutor, but by the court as well. We are, however, convinced that neither the court nor the prosecutor overstepped the bounds of propriety. See State in Interest of *371 R.R., 79 N.J. 97, 114-15, 398 A.2d 76 (1979) (court may allow leading questions to elicit facts from young witness); State v. Riley, 28 N.J. 188, 200, 145 A.2d 601 (1958), appeal dismissed, 359 U.S. 313, 79 S.Ct. 891, 3 L.Ed.2d 832, cert. denied, 361 U.S. 879, 80 S.Ct. 166, 4 L.Ed.2d 117 (1959) (court may elicit facts from witnesses). Further, the judge in making her adjudication, placed more reliance on J.B.'s out-of-court videotaped interview, during which the detective used virtually no leading questions, than she did on his in-court testimony. Under all of the circumstances, we would find no reversible error in the manner in which testimony was elicited from J.B.
In his sixth point, B.G. contends that the portion of his disposition which orders him to serve sixty days at a correctional facility is illegal because of his developmental disability. Although we reject this contention because he has not demonstrated such a disability as would come under N.J.S.A. 2A:4A-44(c), we do so without prejudice to his rights to again raise the issue in the event he violates probation and is called upon to serve a further period of detention. See State in Interest of R.M., 141 N.J. 434, 661 A.2d 1277 (1995).
In B.G.'s seventh point, he argues that the court abused its discretion in ordering the public disclosure of his identity after he moved to prohibit disclosure. N.J.S.A. 2A:4A-60(f) provides:
Information as to the identity of a juvenile adjudicated delinquent, the offense, the adjudication and the disposition shall be disclosed to the public where the offense for which the juvenile has been adjudicated delinquent if committed by an adult, would constitute a crime of the first, second or third degree, or aggravated assault, destruction or damage to property to an extent of more than $500.00, unless upon application at the time of disposition the juvenile demonstrates a substantial likelihood that specific and extraordinary harm would result from such disclosure in the specific case. Where the court finds that disclosure would be harmful to the juvenile, the reasons therefor shall be stated on the record.
[N.J.S.A. 2A:4A-60(f) (emphasis added).]
Although the judge mistakenly commented that the statute gives a presumption in favor of disclosure despite the deletion of any reference to such a presumption in the 1994 amendment, we are satisfied that the judge properly considered the entire issue and *372 did not err in her application of the amended statute. See State in Interest of B.C.L., 82 N.J. 362, 413 A.2d 335 (1980).
In B.G.'s initial brief, he argued that the registration and community notification provisions of "Megan's Law" (N.J.S.A. 2C:7-1 through -5, and N.J.S.A. 2C:7-6 through -11, respectively), should not be applied to juveniles. Since the filing of that brief, in a reply brief filed after our Supreme Court decided Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995), he maintains that application of Megan's Law to juveniles violates the philosophy of the Juvenile Code, the Doe opinion notwithstanding.
This issue was not raised below, even though the court directed that B.G. register in compliance with the Law. In Doe v. Poritz, supra, the sex offender was not a juvenile, and therefore, the Court did not have to rule on the precise issue raised by appellant herein, i.e., whether the Law violates the Code of Juvenile Justice in its application to juvenile offenders. Nevertheless, the Court did note that even though John Doe was seeking relief only for himself, the decision "will affect all sex offenders covered by the laws." Doe v. Poritz, supra, 142 N.J. at 26, 662 A.2d 367. The Court stated that the registration requirement will apply to "all convicts, all juveniles, no matter what their age, found delinquent because of the commission of those offenses, and to all found not guilty by reason of insanity." Id. at 21, 662 A.2d 367.
We fail to see how the Court could have arrived at any other interpretation since the Law specifically includes any "person who has been ... adjudicated delinquent ... for commission of a sex offense...." N.J.S.A. 2C:7-2. The court noted that the laws are designed to give people a chance to protect themselves and their children; as such, the laws are designed not to punish the criminals, but to protect society. Id. at 12, 662 A.2d 367. Moreover,
The law does not apply to all offenders but only to sex offenders, and as for those who may have committed their offenses many years ago, it applies only to those who were found to be repetitive and compulsive offenders, i.e., those most likely, even many years later, to reoffend, providing a justification that strongly supports the remedial intent and nature of the law. It applies to those with no culpability, *373 not guilty by reason of insanity, those who would clearly be excluded if punishment were the goal but included for remedial purposes. And it applies to juveniles, similarly an unlikely target for double punishment but included for remedial protective purposes.

[Id. at 74, 662 A.2d 367 (emphasis added).]
B.G. also contends that, if Megan's Law is applicable to juveniles, then the requirements of that law must terminate on his eighteenth birthday, in accordance with N.J.S.A. 2A:4A-47. The State responds that the requirements of Megan's Law do not constitute a "disposition" entered in accordance with the Code of Juvenile Justice and hence, the provisions of N.J.S.A. 2A:4A-47 do not apply. We agree with the State.
N.J.S.A. 2A:4A-47 states:

Any order of disposition entered in a case under this act shall terminate when the juvenile who is the subject of the order attains the age of 18, or 1 year from the date of the order whichever is later unless such order involves incarceration or is sooner terminated by its terms or by order of the court. Any agency providing services pursuant to any court ordered disposition shall give prior notice to the court at least 30 days before terminating these services which notice shall include the date of intended termination.
[Emphasis Added.]
The registration and community notification requirements of Megan's Law cannot be deemed part of a disposition entered in a case under "this act," i.e., the Code of Juvenile Justice. The Legislature must be presumed to know the provisions of the Juvenile Code, and it nonetheless provided for continuing application of Megan's Law to juvenile offenders. Under usual rules of statutory construction, the more specific law must be interpreted as prevailing over the more general one. New Jersey Transit Corp. v. Borough of Somerville, 139 N.J. 582, 591, 661 A.2d 778 (1995).
Lastly, B.G. challenges the constitutionality of the notification and registration provisions on the grounds that they violate the ex post facto and double jeopardy clauses of the federal and State constitutions, constitute cruel and unusual punishment, and violate his rights to due process under both the federal and state constitutions. *374 Our Supreme Court in Doe v. Poritz, supra, has decided these issues and we cannot further consider the issues at this time.
Affirmed.