701 A.2d 760

STATE OF NEW JERSEY IN THE INTEREST
OF K.B., A JUVENILE.

Superior Court of New Jersey
Appellate Division

Argued March 10, 1997—Decided October 27, 1997.

Before Judges HAVEY, KESTIN and EICHEN.

*Patricia E. Apy* argued the cause for appellant K.B. (*Paras, Apy & Reiss,* attorneys; *Ms. Apy,* on the brief).

*Barry J. Serebnick,* Assistant Prosecutor, argued the cause for respondent State of New Jersey (*John Kaye,* Monmouth County Prosecutor, attorney; *Mr. Serebnick,* of counsel and on the letter brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

The juvenile defendant, K.B., aged thirteen, pled guilty to a course of conduct which, if charged against an adult, would have constituted repeated instances of first degree aggravated sexual assault. The victim was K.B.'s step-brother, eight years old when the conduct began. The children lived in the same household.

Forty days after the matter was adjudicated and a disposition ordered, a motion was filed on K.B.'s behalf to modify and clarify the dispositional order to provide, *inter alia,* that he be exempted from the disclosure provisions of *N.J.S.A.* 2A:4A–60. The State objected to the request regarding non-disclosure both as untimely and with respect to its merits. After the trial court determined that the necessary threshold showing had been made through documents submitted, a hearing was held.

At the hearing, the court heard testimony from two therapists, Howard D. Silverman, Ph.D., K.B.'s treating psychologist, and Elliot Katz, M.S.W., who was treating the victim. On the basis of

that testimony, Judge Kreizman rendered an oral opinion. He found this case to be

[no] different than most cases of young people who are charged with sexual offenses.

[*N.J.S.A.* 2A:4A–60f] carves out an opportunity for the juvenile to demonstrate a substantial likelihood that specific and extraordinary harm would result from such disclosure in a specific case. And that is the only area where this Court has some discretion.

The other areas, the time of the charge, adjudication, disposition, information as to the identity of the juvenile charged with an offense, the offense charged, the adjudication and disposition shall, upon request, be disclosed to the victim or a member of the victim's family. The law enforcement or prosecuting agency shall, at the time of the charge, adjudication or disposition, advise the principal of the school where the juvenile is enrolled of the identity of the juvenile charged, the offense charged, the adjudication and the disposition thereof. That's *shall*. The Prosecutor doesn't have any power not to do that, nor does the court have any power to order him not to do that.

The offenses committed by an adult would constitute a crime. It's one of the conditions. It tells what the principal can do under the statute.

Information as to the identity of an adjudicated delinquent, the offense, the adjudication and the disposition shall be disclosed to the public where the offense for which a juvenile has been adjudicated delinquent if committed by an adult would constitute a crime of the first, second or third degree[,] ... [u]nless upon application at the time of disposition the juvenile demonstrates a substantial likelihood that specific and extraordinary harm would result from such disclosure in this specific case.

Where the court finds that disclosure would be harmful to the juvenile, the reasons therefor must be stated on the record.

[*N.J.S.A.*] 2A:4A–60 has been redrafted, effective June 29th, 1994 to provide greater access to information concerning juvenile offenders.

We know that throughout the Legislature, in the past years, there has been a greater opening up of juvenile court activities, criminal activities, more reporting, more information being provided to the public. We are all aware of Megan's Law and the tremendous amount of exposure given in that area.

Counsel must demonstrate a substantial likelihood that specific and extraordinary harm would result from such disclosure in the specific case. The court must consider the juvenile's prospects of rehabilitation and weigh it against the public's right to be informed. The cases and the history of that law provide that there is a tremendous burden on the juvenile to show the specific and extraordinary harm that that would outweigh the public's right to know.

[In] *State in the Interest of B.C.L.*, [82 *N.J.* 362, 413 *A.*2d 335 (1980),] ... B.C.L. and three other juveniles attempted to extort $10,000 from the owner of a motel. The juveniles set fire to a trash chute at the motel and then sent the owner a

written demand for money. They were apprehended. B.C.L. was found delinquent on the charges of arson, conspiracy and attempted extortion.

He then moved to have his identity kept confidential. Three experts were presented. One of whom was a psychologist who testified that any unfavorable attention resulting from the publication of B.C.L.'s name, [would] dramatically reverse[ ] progress in school and his social relationships.

Another expert agreed with the other witnesses that the release of the juvenile's identity and circumstances of his offenses would be detrimental to his rehabilitation.

The trial court denied the juvenile's application, holding that he had failed to demonstrate good cause for withholding dissemination under the statute. This holding was affirmed by the Appellate Division and the New Jersey Supreme Court, saying—this is the Appellate Division saying, that in striking a balance of policies in favor of disclosure, the court emphasized that the best interests of the public, within the meaning of the statute, comprehends not only the public's right to know the facts, but also the salutary effect of publicity in deterrence of the affected juvenile and others.

Our Supreme Court in that same case said that although the release of the juvenile's name might affect his rehabilitation in some generally adverse manner, this alone does not constitute good cause under the statute. Since the Legislature intended disclosure to be the rule and not the exception, the juvenile must demonstrate a substantial likelihood of specific harm to constitute a showing of good cause. Therefore, the Court upheld the juvenile judge's decision to allow disclosure in [that] case.

There was an awful lot of speculation by Dr. Silverman as to what could happen to this young man. He might sit in the house. He might be ostracized. He might be self-destructive. He may lose his self-esteem. He may lose self-respect. No guarantees. From the field that the doctor works in, there probably are very few guarantees.

The counsel for the juvenile relies upon [*State In the Interest of] B.J.W.*, 250 *N.J.Super.* 619, 595 *A.*2d 1132, [ (Ch. Div.1991) ], where there was a horrible situation where the child killed a couple of members of his family. In that case, the court held that there was specific and extraordinary harm that could befall [ ] this child for the horrible situation that was involved in that case.

I think that specific and extraordinary harm means more than what we've heard here. I think if a psychologist, psychiatrist, professional said, if you release his name, this kid is going to run away from home and he's going to commit suicide. That's specific and extraordinary.

What's specific and extraordinary? A young man goes out and writes racist remarks all over a neighborhood. He is caught and information is released and he lives in a minority neighborhood. There is the very strong possibility of specific and extraordinary harm.

[The prosecutor] talks about one who goes to another town where his gang is involved[,] comes home and is [the] subject of not only ridicule, but of real life threatening conditions as a result of that.

In Pension Law, ... police and fire employees who are injured on the job make applications for their pension and the law is that there must be extraordinary injury, injury that's unforeseeable[;] not if you're a police officer, you get shot in the line of duty or you get hit in an automobile accident, something really unforeseen. And really one of the definitions for extraordinary is unforeseen.

And this much less than unforeseen, these kinds of reactions are foreseen. I dispose of approximately, I don't know, today[,] 25 young people. And I would venture to say that most of them will have similar responses to the public being aware of the offenses that they committed. They might be ostracized by their community. Their self-esteem would drop. They might harm themselves. They might harm others. They have increased anger. They would be looked upon as pariahs by their community. There might be isolation, all those things. And I think that that's really the bottom line in this case, that this is really not extraordinary. It is not unusual that the conditions which were reported by Dr. Silverman are not specific and extraordinary to [K.B.].

I find that the burden has not been overcome by defense and I'll deny ... and ... permit the Prosecutor to disclose the information pursuant to the statute.

On appeal, the juvenile raises the following issues:

*POINT I* THE COURT ERRED IN DENYING JUVENILE'S APPLICATION FOR NON–DISCLOSURE PURSUANT TO *N.J.S.A.* 2A:4A–60(a) [sic] IN THAT: A) THE COURT ERRONEOUSLY DEFINED "EXTRAORDINARY" AS MEANING "UNFORESEEN" OR "UNCONTEMPLATED" AS APPLIED TO THE GENERAL POPULATION OF JUVENILE OFFENSES; B) THE COURT IN ITS DEFINITION OF EXTRAORDINARY MODIFIES THE BURDEN OF PROOF UPON THE JUVENILE FROM A PREPONDER-ANCE OF THE EVIDENCE TO "BEYOND A REASONABLE DOUBT"; C) THE COURT SHOULD, AS APPROPRIATE EXPERT TESTIMONY IS OFFERED IN INTRA–FAMILY CRIMES, CONSIDER THE EFFECT OF DISCLOSURE UPON THE VICTIM PURSUANT TO THE PROTECTION OF THE VICTIM, *N.J.S.A.* 2A:82–46d.

*POINT II* SHOULD THE JUVENILE NON–DISCLOSURE STATUTE BE SUCCESSFULLY ASSERTED PURSUANT TO *N.J.S.A.* 2A:4A–60, THE REGISTRATION REQUIREMENTS PURSUANT TO *N.J.S.A.* 2C:7–1 SHOULD BE SIMILARLY QUASHED.

■ Our review of the record in the light of the arguments advanced by the parties discloses that Judge Kreizman's findings are supported by substantial evidence in the record, and are therefore entitled to deference. *State v. Johnson,* 42 *N.J.* 146, 160–62, 199 *A.*2d 809 (1964); *State v. Boone,* 114 *N.J.Super.* 521, 525, 277 *A.*2d 414 (App.Div.), *certif. denied, sub nom. State v. Terry,* 58 *N.J.* 595, 279 *A.*2d 680 (1971).

We are, further, in substantial agreement with the views expressed by Judge Kreizman in interpreting and applying *N.J.S.A.* 2A:4A–60f in its current form, with the guidance furnished by the Supreme Court in *B.C.L., supra,* 82 *N.J.* 362, 413 *A.*2d 335, regarding earlier legislation bearing upon the subject matter. *N.J.S.A.* 2A:4A–60, in a form resembling the current version, was initially enacted with the 1982 Code of Juvenile Justice, *N.J.S.A.* 2A:4A–20 to –49; *see also N.J.S.A.* 2A:4A–60 to –62 and –70 to –90; and, as amended, must be read *in pari materia* with the provisions of the Code and other contemporaneous enactments.

We regard as correct, for the reasons stated, Judge Kreizman's view that in order to overcome the statutory directive for disclosure of information by the standards established, *i.e.,* by demonstrating "a substantial likelihood that specific and extraordinary harm would result from such disclosure in the specific case," *N.J.S.A.* 2A:4A–60f, a juvenile adjudicated delinquent must make a showing of significant detriments flowing to the individual that are both sufficiently grave and person- and situation-particular, *i.e.,* not shared by juvenile defendants in general. We agree with Judge Kreizman that such a showing was not made here. We reject K.B.'s argument that the statutory criteria as applied amounted to an inappropriate surrogate for an excessively high standard of proof. Nor do we view the result reached as being based upon an impermissible presumption in favor of disclosure. *See State In the Interest of B.G.,* 289 *N.J.Super.* 361, 371, 674 *A.*2d 178 (App.Div.), *certif. denied,* 145 *N.J.* 374, 678 *A.*2d 714 (1996).

We need not decide whether the particularized showings that are required to justify non-disclosure may relate to the victim instead of or as well as the juvenile defendant, especially where they are part of the same family unit. Our review of the testimony of the therapist treating the victim discloses that it, too, did not meet the statutory threshold standard for gravity and individualized impact, even when considered in the light of *N.J.S.A.* 2A:82–46d (regarding protection from disclosure of facts relating to a child victim of sexual assault).

The remaining issue raised by the juvenile is advanced conditionally. Having determined that K.B. has not satisfied the non-disclosure standards of *N.J.S.A.* 2A:4A–60, we need not address the question of whether and how *N.J.S.A.* 2C:7–1 to –11 (regarding registration and notification of release of certain offenders) should be applied.

■ In its reply brief, the State renews its argument made to the trial court that K.B.'s motion was out of time when measured by the requirement in *N.J.S.A.* 2A:4A–60f that the application for non-disclosure be made "at the time of disposition." Although the State has not filed a cross-appeal from the trial court's ruling to hear the application on its merits, we address the timeliness question nevertheless. We regard the motion as having been timely by the statutory norm because it was coupled with a good faith application for other relief in the nature of an amendment to the initial dispositional order. K.B. sought transfer of supervision over this matter, including issues of access and visitation, to the judge who was overseeing other orders, emanating from the Family Part's matrimonial docket, relating to K.B.'s family. The trial court granted the motion and entered a modified dispositional order. In such circumstances, the request to the trial court to consider an amendment must be seen as having reopened the initial dispositional order, empowering the trial judge, as a matter of discretion, to hear other issues bearing upon disposition, including the *N.J.S.A.* 2A:4A–60f application.

Affirmed.