845 A.2d 173 (2004)
368 N.J. Super. 24
STATE of New Jersey in the Interest of J.P.F., Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 11, 2004.
Decided April 2, 2004.
*174 Krista Haley, Assistant Prosecutor, argued the cause for appellant/cross-respondent State of New Jersey (Wayne J. Forrest, Somerset County Prosecutor, attorney; Ms. Haley, on the brief).
Michael J. Rogers, Allenwood, argued the cause for respondent/cross-appellant J.P.F. (McDonald & Rogers, attorneys; Mr. Rogers, of counsel and on the brief).
Before Judges LINTNER, LISA and REISNER.
The opinion of the court was delivered by
LISA, J.A.D.
This appeal requires reconciliation of the apparent conflict between the non-disclosure requirement of the Code of Juvenile Justice (Juvenile Code or Code), N.J.S.A. 2A:4A-20 to -48, and the disclosure required by the Community Registration and Notification Laws (Megan's Law), N.J.S.A. 2C:7-1 to -19. J.P.F., a seventeen-year-old juvenile, was adjudicated delinquent for an offense which, if committed by an adult, would constitute fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3b. For this offense, the offender is subject to Megan's Law only if the victim is a minor. N.J.S.A. 2C:7-2b(2). The victim in this case was seventeen years old. The Family Part judge did not order Megan's Law registration and notification as part of the disposition. The State appeals, contending the disposition is illegal. We agree and hold that Megan's Law trumps the Juvenile Code's non-disclosure provision. We therefore reverse on the State's appeal.
J.P.F. cross-appeals, contending
POINT I
THE ADJUDICATION OF DELINQUENCY FOR THE LESSER INCLUDED OFFENSE OF FOURTH DEGREE SEXUAL CONTACT WAS AGAINST THE WEIGHT OF THE EVIDENCE, AND FATALLY INCONSISTENT WITH THE COURT'S ACQUITTAL ON THE ORIGINAL CHARGE OF SECOND DEGREE SEXUAL ASSAULT (Not Raised Below by Formal Post Judgment Motion).
POINT II
THE AGE OF THE VICTIM AT THE TIME OF THE OFFENSE WAS NEVER ESTABLISHED AND, ACCORDINGLY, THE REGISTRATION REQUIREMENTS OF MEGAN'S LAW ARE INAPPLICABLE.
POINT III
THE CODE OF JUVENILE JUSTICE PRECLUDES THE APPLICABILITY OF MEGAN'S LAW TO AN ADJUDICATION OF JUVENILE DELINQUENCY FOR FOURTH DEGREE SEXUAL CONTACT IF COMMITTED BY AN ADULT, PARTICULARLY *175 WHEN THE ACTOR IS OF THE SAME OR OF SIMILAR AGE.
We reject these contentions and affirm on J.P.F.'s cross-appeal.

I
The offense occurred on January 14, 2003. J.P.F. was born on May 3, 1985. The victim, V.K., was born on February 14, 1985.[1] Thus, at the time of the offense, both were seventeen years old. The juvenile and the victim were, respectively, three-and-one-half months and one month shy of their eighteenth birthdays.
J.P.F. and V.K. became acquainted with each other about three weeks before January 14, 2003. According to V.K., J.P.F. called her daily, seeking to establish a romantic relationship. She resisted his efforts, reminding him that she had a boyfriend and he had a girlfriend. On the evening of January 14, 2003, J.P.F., V.K., and several mutual friends were in each other's company. At some point they were at a bowling alley. V.K. was expecting her boyfriend to arrive, and she believed he had her car keys. When the boyfriend failed to arrive, J.P.F. agreed to take V.K. and another girl home.
V.K. told the other girl that she did not want to be left alone in the car with J.P.F. Nevertheless, J.P.F. dropped the other girl off first. At J.P.F.'s request, V.K. then moved from the back seat to the front seat. As J.P.F. drove, he began rubbing V.K.'s legs with his right hand. V.K. told him she did not approve and leaned away from J.P.F., who persisted in his conduct, rubbing his hand up and down between V.K.'s knee and crotch.
J.P.F. drove to the location where V.K.'s car was parked. He then disclosed that he, not V.K.'s boyfriend, had V.K.'s car keys. According to V.K., J.P.F. placed the keys in his crotch area, over his clothing, and invited her to retrieve them. She refused, and he handed her the keys. This provided the basis for a harassment count, N.J.S.A. 2C:33-4c.
V.K. exited J.P.F.'s vehicle, entered her own, and started the engine. Then, with the engine running, V.K. got out of her vehicle and returned to J.P.F.'s to retrieve some personal items. While she was doing so, J.P.F. got out and stood in front of the driver's-side door of V.K.'s car. V.K. attempted to run to the passenger-side door to enter her car, but J.P.F. removed her key from the ignition and locked the door before she could enter. According to V.K., when she returned to the driver's side, J.P.F.'s penis was exposed and he demanded that she perform oral sex before she would be allowed to leave. This provided the basis for a lewdness count, N.J.S.A. 2C:14-4a.
J.P.F. then moved behind V.K. and began caressing her buttocks and chest over her clothing. She tried to get away, elbowing him while he was groping her. J.P.F. then grabbed V.K. and lifted her off of the ground. V.K. continued to protest. J.P.F. forced his hand into the back of *176 V.K.'s jeans, touching her buttocks and vaginal area under the clothing. V.K. contends J.P.F. digitally penetrated her, which provided the basis for a sexual assault by force or coercion count, N.J.S.A. 2C:14-2c(1). V.K.'s cell phone rang. She told J.P.F. that was probably her mother and if she did not answer her mother would be worried and would likely call the police. The incident then ended and V.K. left the scene.
V.K. reported the incident to the police the next day. In her report to the police and in her trial testimony, V.K. steadfastly denied that she gave J.P.F. any indication, through verbal or non-verbal communications, that she authorized his conduct towards her. J.P.F. did not testify. His defense was consent. He produced a witness, S.S., a girl who was a friend of his for about five years and who had become acquainted about one month before the incident with V.K. through J.P.F. and his friends.
S.S. testified that she spoke on the telephone to V.K. the night of the incident after it occurred. S.S. had already spoken to J.P.F. and to V.K.'s boyfriend and knew that V.K. was upset about the incident. S.S. testified that V.K. told her that J.P.F. grabbed or hugged her, put his hands underneath her pants and digitally penetrated her. S.S. stated that V.K. "told him to stop and that, you know, oh, I have a boyfriend, don't do that." S.S. continued that V.K. "said thatthat at first he didn't stop and then when she really looked at him and got serious about it, when she stopped giggling I guess you would say, then he stopped." S.S. further stated that the version of events told to her by V.K. was similar to the version told to her earlier by J.P.F.
J.P.F. also produced M.R., one of J.P.F.'s best friends for about the last four or five years. M.R. had only recently met V.K. He testified that during the three weeks before the incident he observed J.P.F. and V.K. together on a number of occasions. He described V.K.'s demeanor towards J.P.F. as very friendly and flirtatious, the same as her demeanor towards other male friends. M.R. also testified that on the night of the incident V.K. had a disagreement with her boyfriend. This testimony was apparently offered to suggest that because of a falling out with her boyfriend V.K. might have been receptive to J.P.F.'s advances that night.
At the conclusion of the adjudicatory hearing, the judge found that the State failed to prove beyond a reasonable doubt the three counts charged in the complaint, i.e., harassment, lewdness and sexual assault. He found, however, that the State did prove beyond a reasonable doubt that J.P.F. committed the offense of criminal sexual contact by force or coercion, N.J.S.A. 2C:14-3b and N.J.S.A. 2C:14-2c(1), as a lesser-included offense of sexual assault. The judge concluded "there was clearly sexual contact and I do find that there was force used against the victim's will." Although acknowledging there may have been some "mixed messages," the judge was convinced "[t]here's no way that this particular touching was certainly authorized and/or consented to by the victim."
The judge ordered a disposition of one-year probation, counseling, no contact with the victim and appropriate mandatory monetary assessments. The judge also ordered twenty-two days detention and awarded credit for the twenty-two days the juvenile had been detained on these charges. The judge declined to order Megan's Law registration.
The judge acknowledged that the literal reading of N.J.S.A. 2C:7-2b(2) required such registration because J.P.F. was adjudicated delinquent for an offense which, if *177 committed by an adult, would constitute criminal sexual contact pursuant to N.J.S.A. 2C:14-3b, and the victim was a minor. He was of the view, however, that in light of the rehabilitative purposes of the Juvenile Code, N.J.S.A. 2C:7-2b(2) should not be interpreted to require Megan's Law registration where the juvenile and the victim were about the same age, particularly where that age is nearly the age of majority. The judge acknowledged the underlying purpose of Megan's Law to protect the public. He stated:
[The public is] being protected by me placing him on probation, by me requiring him to undergo the treatment as recommended by the doctor. So the public is notI'm just not saying, you're on the loose without some type of supervision.
....
The point is this, because there has been no delineation, if the kid were 17, the victim was 17 years, 364 days, she should be treated exactly the same as if she were one year old, or one day old. Now, I don't think that's what the Legislature had in mind.... [In] Juvenile Court, we are supposed to fashion rehabilitative remedies so we do not have this young man or anybody else coming back, either as a juvenile or as an adult.

II
In his cross-appeal, J.P.F. argues the adjudication for criminal sexual contact is against the weight of the evidence and is fatally inconsistent with the not-guilty finding on the charged offense of sexual assault. He contends the judge did not find V.K. credible because he rejected her testimony that J.P.F. put the car keys in his lap and invited her to get them (harassment) and that he exposed himself to her (lewdness). J.P.F. argues that the only difference between sexual assault and criminal sexual contact is the element of penetration. According to J.P.F., he has never denied penetration. Of course, he did not testify, and he gave no statement. So he never directly admitted it. J.P.F.'s consent theory is based on S.S.'s testimony that the more benign version of the events recounted to her by V.K. the night of the incident (which included penetration) was substantially similar to what J.P.F. had told S.S. about the incident. J.P.F. insists, therefore, that if the judge was convinced beyond a reasonable doubt that his conduct was forcible, and not consented to by V.K., the judge would have found him guilty of sexual assault.
We reject these arguments. Our standard of review is narrow and is limited to evaluation of whether the trial judge's findings are supported by substantial, credible evidence in the record as a whole. State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999); State v. Johnson, 42 N.J. 146, 161, 199 A.2d 809 (1964). We defer to those findings, which are substantially influenced by the judge's feel of the case. Ibid.; see also State in the Interest of S.B., 333 N.J.Super. 236, 241, 755 A.2d 596 (App.Div.2000).
The judge found credible V.K.'s testimony that J.P.F. forced himself on her, contrary to her repeated protestations. The judge apparently discounted or rejected the partial, vague, second-hand accounts given by S.S. From the totality of the judge's findings, we infer that he was not convinced beyond a reasonable doubt that the penetration occurred. But the judge clearly and emphatically found that the improper touching did occur, it was unauthorized, and it was accomplished by force. This finding is amply supported by the record, and we will not disturb it on appeal.

*178 III
We now address the State's appeal, in which it contends the disposition is illegal because Megan's Law registration was not ordered. This issue involves the application of legal principles, as opposed to factual findings. While we afford great deference to the trial judge's factual findings, the trial judge's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference. Manalapan Realty v. Manalapan Tp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).

A.
Megan's Law requires registration by a person "who has been convicted, adjudicated delinquent or found not guilty by reason of insanity" for commission of a listed "sex offense." N.J.S.A. 2C:7-2a. The listed offenses include "criminal sexual contact pursuant to N.J.S.A. 2C:14-3b if the victim is a minor." N.J.S.A. 2C:7-2b(2). A Megan's Law registrant is potentially subject to a lifetime obligation, but, subject to certain exceptions not applicable here, N.J.S.A. 2C:7-2g, may petition the court to terminate the obligation after fifteen years upon proof that the registrant has been offense-free and does not pose a threat to the safety of others. N.J.S.A. 2C:7-2f.
A consequence of Megan's Law applicability is community notification about the registrant and the registrant's offense. N.J.S.A. 2C:7-8; see In re Registrant J.G., 169 N.J. 304, 313, 777 A.2d 891 (2001). The scope of notification is based upon the risk of re-offense: Tier 1 (low risk), Tier 2 (moderate risk), or Tier 3 (high risk). N.J.S.A. 2C:7-8; In re Registrant J.G., supra, 169 N.J. at 313, 777 A.2d 891. Although the prosecutor makes the initial Tier classification determination, that determination is subject to judicial review, the registrant is given notice and an opportunity to contest, and the ultimate determination is made by the Superior Court. Doe v. Poritz, 142 N.J. 1, 30, 662 A.2d 367 (1995). See also In re Registrant T.S., 364 N.J.Super. 1, 9, 834 A.2d 419 (App.Div.2003). The burden is on the State to prove by clear and convincing evidence the propriety of its classification and notification plan. E.B. v. Verniero, 119 F.3d 1077, 1108-11 (3d Cir.1997), cert. denied, 522 U.S. 1110, 118 S.Ct. 1039, 140 L. Ed.2d 105 (1998); In re Registrant J.G., supra, 169 N.J. at 330, 777 A.2d 891; In re M.F., 169 N.J. 45, 54, 776 A.2d 780 (2001).
Scope of notification must be carefully circumscribed and narrowly tailored on a case-by-case basis. For Tier 1 registrants, notification is generally limited to local law enforcement agencies; for Tier 2 registrants, notice to community organizations and educational institutions likely to encounter the registrant is also provided; for Tier 3 registrants, additional notification is provided to members of the public likely to encounter the registrant. N.J.S.A. 2C:7-8c; Attorney General Guidelines for Law Enforcement for the Implementation of Sex Offender Registration and Community Notification Laws, § XI A. (March 2000). In determining the scope of notification, the court must evaluate the registrant's individual characteristics and proclivities. Doe v. Poritz, supra, 142 N.J. at 37, 662 A.2d 367; Matter of G.B., 286 N.J.Super. 396, 404-06, 669 A.2d 303 (App.Div.), aff'd, 147 N.J. 62, 685 A.2d 1252 (1996). The guiding principle is that notification must be limited to those organizations or persons that are "likely to encounter" the registrant and to whom the registrant poses a threat. In re M.F., supra, 169 N.J. at 54-55, 776 A.2d 780.
Megan's Law clearly applies to juvenile offenders. N.J.S.A. 2C:7-2; In re Registrant J.G., supra, 169 N.J. at 319, 777 A.2d *179 891; Doe v. Poritz, supra, 142 N.J. at 21, 662 A.2d 367; State in Interest of B.G., 289 N.J.Super. 361, 372-73, 674 A.2d 178 (App.Div.), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996). Just as clearly, Megan's Law is mandatorily applicable for covered offenses. N.J.S.A. 2C:7-2a (providing that a person shall register); see also In re Registrant J.G., supra, 169 N.J. at 335, 777 A.2d 891; State v. Cooke, 345 N.J.Super. 480, 490, 785 A.2d 934 (App.Div.2001), certif. denied, 171 N.J. 340, 793 A.2d 718 (2002). Viewed in isolation, the plain mandate of N.J.S.A. 2C:7-2a compels J.P.F. to register under Megan's Law.
However, the non-disclosure provisions of the Juvenile Code are also clear and compel a contrary result. In particular, N.J.S.A. 2A:4A-60a provides that "legal and other records of the court and probation division ... pertaining to juveniles charged as a delinquent ... shall be strictly safeguarded from public inspection." The section contains ten enumerated exceptions, allowing disclosure, for example, to law enforcement agencies, institutions and agencies providing care or custody to the juvenile, the parents or attorney of the juvenile, and potential civil litigants seeking damages related to an act of delinquency committed by the juvenile. N.J.S.A. 2A:4A-60c further allows disclosure of information to the victim or victim's family, specified law enforcement agencies, the complainant, a party to a subsequent legal proceeding involving the juvenile, upon approval of the court, and, on a confidential basis, to the juvenile's school principal, who may disclose the information under certain guidelines to the school's faculty and staff.
Thus, while information about the juvenile and the delinquency charges and ultimate adjudication must be "strictly safeguarded from public inspection," the non-disclosure requirement is not absolute. The legislative scheme allows limited disclosure to parties and organizations possessing a genuine interest in the information or whenever required for the proper administration of justice. State v. Allen, 70 N.J. 474, 482-83, 361 A.2d 5 (1976).
We see, therefore, that the schemes promulgated by the Legislature prescribe differing levels of disclosure regarding an adjudicated juvenile under the Juvenile Code and Megan's Law. Although there is some overlap (e.g., local law enforcement), Megan's Law potentially allows for greater disclosure to more organizations and individuals. For purposes of our analysis, we assume broader Megan's Law disclosure.

B.
Reconciliation of conflicting legislative enactments requires judicial consideration of legislative intent in an effort to construe the provisions in such a manner that will give effect to both provisions and to the legislative will. State v. Channel Home Ctrs., 199 N.J.Super. 483, 489, 489 A.2d 1225 (App.Div.1985); see also Sutherland Statutory Construction § 46, at 103 (5th ed.1992). The purpose of the non-disclosure provisions of the Juvenile Code is to foster rehabilitation of the juvenile. State in Interest of B.C.L., 82 N.J. 362, 375-77, 413 A.2d 335 (1980). The purpose of Megan's Law is to protect the community from the dangers of recidivism by sexual offenders. In re Registrant J.M., 167 N.J. 490, 495, 772 A.2d 349 (2001); Doe v. Poritz, supra, 142 N.J. at 12-18, 662 A.2d 367.
Our Supreme Court observed in J.G.: "Notwithstanding the clarity of the Legislature's generalized intent to apply Megan's Law to juveniles adjudicated delinquent based on convictions of sex offenses, the judicial task of harmonizing that intent with the protective philosophy underlying the Code of Juvenile Justice, as well as with the statute's specific provisions, is a *180 formidable one." In re Registrant J.G., supra, 169 N.J. at 320, 777 A.2d 891. The Court there considered the applicability of Megan's Law to a juvenile adjudicated delinquent for second-degree sexual assault, N.J.S.A. 2C:14-2c(1), committed when the juvenile was ten years old. Id. at 309-10, 777 A.2d 891. The victim was the juvenile's eight-year-old cousin. Ibid.
In its analysis, the Court considered several pertinent provisions in the Juvenile Code. About a year after Megan's Law became effective, the Code's statement of purpose, N.J.S.A. 2A:4A-21b, was amended to add as a purpose the provision of "a range of sanctions designed to promote accountability and protect the public." Id. at 320-21, 777 A.2d 891. The Court inferred that the amendment was intended to specifically reflect Megan's Law applicability to juveniles adjudicated delinquent of Megan's Law offenses. Id. at 321, 777 A.2d 891. This provision would weigh in favor of Megan's Law applicability, notwithstanding the Code's general non-disclosure provisions.
The Court also noted two sections that would sway the analysis against Megan's Law applicability. N.J.S.A. 2A:4A-48 provides that "[n]o disposition under this act shall operate to impose any of the civil disabilities ordinarily imposed by virtue of a criminal conviction...." Id. at 324, 777 A.2d 891. N.J.S.A. 2A:4A-47a provides that "[a]ny order of disposition entered in a case under this act shall terminate when the juvenile who is the subject of the order attains the age of 18, or three years from the date of the order whichever is later unless such order involves incarceration or is sooner terminated by its terms or by order of the court." Ibid.
In a decision preceding J.G., we had determined that a Megan's Law order for registration and notification did not constitute an "order for disposition," and thus did not run afoul of N.J.S.A. 2A:4A-47a. State in Interest of B.G., supra, 289 N.J.Super. at 373, 674 A.2d 178. In J.G., the Court expressed its approval of our statutory interpretation, but noted that "the philosophical conflict between the two statutes is less easily resolved." In re Registrant J.G., supra, 169 N.J. at 325, 777 A.2d 891. "The Juvenile Code's determination that a disposition intended to discipline or rehabilitate an adjudicated delinquent should terminate after three years or at age eighteen, whichever is later, sharply contrasts with the potentially lifetime registration requirement imposed by Megan's Law." Ibid.
The Court then turned its attention to provisions in the Juvenile Code and to the common law which accord particular treatment to juveniles under age fourteen. Id. at 325-27, 777 A.2d 891. At common law, children under seven are conclusively presumed incapable of criminal intent; children between seven and fourteen are rebuttably presumed incapable of criminal intent; and children over fourteen are rebuttably presumed capable of criminal intent. Id. at 326-27, 777 A.2d 891. Favored treatment in the Juvenile Code for juveniles under fourteen (e.g., non-waiver to adult court, no matter how serious the offense, N.J.S.A. 2A:4A-26) and in our decisional law (e.g., general inadmissibility of confession if parent not present, State v. Presha, 163 N.J. 304, 315, 748 A.2d 1108 (2000)) are rooted in the common law distinctions. Id. at 325-26, 748 A.2d 1108.
J.G. pled guilty to sexual assault. His factual basis was established essentially by answering "yes" to a series of leading questions. In re Registrant J.G., supra, 169 N.J. at 310-12, 777 A.2d 891. No effort was made to ascertain J.G.'s criminal capacity. Id. at 336, 777 A.2d 891. Thus the presumption of incapacity was not overcome. The Court "regard[ed] as implausible *181 and anomalous the notion that a child `sex offender' such as J.G. should pursuant to Megan's Law be subject to a lifetime registration requirement merely on the basis of a delinquency adjudication that included no effort to assess his true culpability." Ibid.
To avoid a construction that would produce this absurd result, the Court harmonized the conflicting provisions of Megan's Law and the Juvenile Code to best reflect the legislative objectives underlying both statutes:
Although we acknowledge that registration and community notification do not constitute dispositions pursuant to the Juvenile Code, we hold, consistent with the purpose underlying N.J.S.A. 2A:4A-47(a), that with respect to juveniles adjudicated delinquent for sexual offenses committed when they were under age fourteen Megan's Law registration and community notification orders shall terminate at age eighteen if the Law Division, after a hearing held on motion of the adjudicated delinquent, determines on the basis of clear and convincing evidence that the delinquent is not likely to pose a threat to the safety of others. We import that standard, but with a higher burden of proof, from N.J.S.A. 2C:7-2, the provision of Megan's Law that authorizes the termination of registration obligations of persons who have not committed a sex offense within fifteen years of conviction or release from a correctional facility, whichever is later. Eligible delinquents unable to satisfy that high standard of proof will continue to be subject to the registration and notification provisions of Megan's Law. But with respect to those adjudicated delinquents whose proofs meet that standard, and whose youthfulness at the time of the offense rendered uncertain his or her criminal capacity and future dangerousness, we believe our holding is faithful to the rehabilitative goals of the Juvenile Code without undermining the salutary objectives of Megan's Law.
[Id. at 337, 777 A.2d 891 (emphasis added).]
The essential circumstance underpinning this holding is the presumptive criminal incapacity of a child under fourteen years. The holding is plainly limited to that distinct category of juveniles.

C.
The issue before us in this case has been discussed but not decided in other cases. We found it unnecessary to reach the issue where we determined that the juvenile failed to satisfy the non-disclosure standard of N.J.S.A. 2A:4A-60f applicable to first-degree aggravated sexual assault. State in Interest of K.B., 304 N.J.Super. 628, 635, 701 A.2d 760 (App.Div.1997). Because the applicable Juvenile Code provision did not preclude disclosure, there was no need to "address the question of whether and how [Megan's Law] should be applied." Ibid. See also Cannel, New Jersey Criminal Code Annotated, comment on N.J.S.A. 2C:7-2 (2003) ("It is not clear how the requirements of this statutory scheme [N.J.S.A. 2C:7-2] would be applied to a juvenile successfully asserting exemption from the statutory disclosure requirements of N.J.S.A. 2A:4A-60f.") The Court in J.G. referred to the "apparent tension" between the provisions and the difficult "philosophical conflict" they pose. In re Registrant J.G., supra, 169 N.J. at 325, 777 A.2d 891. The Court did not have to resolve the dilemma because it grounded its decision on the age of the juvenile.
The question is here squarely presented and must be resolved. We reject the notion that the Juvenile Code's non-disclosure provisions override Megan's Law as a general proposition. We rejected this argument *182 in B.G., where the juvenile argued "that application of Megan's Law to juveniles violates the philosophy of the Juvenile Code, the Doe opinion notwithstanding." State in Interest of B.G., supra, 289 N.J.Super. at 372, 674 A.2d 178. We reasoned that the Legislature adopted Megan's Law with presumed knowledge of its previously enacted Juvenile Code "and it nonetheless provided for continuing application of Megan's Law to juvenile offenders. Under usual rules of statutory construction, the more specific law must be interpreted as prevailing over the more general one." Id. at 373, 674 A.2d 178 (citing New Jersey Transit Corp. v. Borough of Somerville, 139 N.J. 582, 591, 661 A.2d 778 (1995)). We therefore held that Megan's Law registration would not terminate at age eighteen under N.J.S.A. 2A:4A-47.
In J.G., the Supreme Court approved of our rationale. In re Registrant J.G., supra, 169 N.J. at 325, 777 A.2d 891. In light of the Court's approval and its rationale limiting its holding to juveniles under fourteen, we view our holding in B.G. to remain viable for juveniles over fourteen. See Cannel, supra, comment on N.J.S.A. 2C:7-2 ("Note that [B.G.], which held broadly that the registration requirement for juveniles does not terminate at eighteen is apparently still good law with regard to juveniles whose offenses were committed when they were fourteen or older."). If the Court in J.G. was of the view that the Juvenile Code generally and completely overrode Megan's Law, it would have had no need to make a particularized analysis and holding pertaining only to juveniles under fourteen.
J.P.F. argues not merely that the obligation of an adjudicated delinquent who committed the offense when over fourteen should be subject to termination at age eighteen as in J.G. He argues Megan's Law should not apply at all, at least not in the circumstances of his case. The trial judge agreed and did not require J.P.F. to register under Megan's Law. This position is clearly at odds with J.G. Notwithstanding the compelling reasons articulated by the Court in J.G. for differentiated treatment of juveniles under fourteen, the Court did not go so far as to exempt them from Megan's Law. The Court limited its ruling to the allowance for that narrow and clearly defined class of juveniles to seek early termination. The Court also held that juveniles who committed their sex offense when under fourteen would continue to be subject to Megan's Law after reaching eighteen, potentially for life, if they could not clearly and convincingly prove that they do not pose a threat to the safety of others. In re Registrant J.G., supra, 169 N.J. at 337, 777 A.2d 891.
J.P.F. argues that the low level nature of his fourth-degree offense, coupled with the requirement that it is Megan's Law eligible only if the victim is a minor, where he and the victim were both seventeen years old at the time of the offense, supports the trial judge's conclusion that the Legislature could not have intended Megan's Law to apply. This argument is premised on the supposition that in these circumstances the rehabilitative purpose of the Juvenile Code and its protective non-disclosure provisions compels a construction of N.J.S.A. 2C:7-2b(2) that alters the clear language of the provision with respect to criminal sexual contact.
The provision makes criminal sexual contact a Megan's Law offense only if the victim is a minor. J.P.F. would have us construe the provision to further require that the perpetrator must be an adult or, if the perpetrator is a minor, that the perpetrator must be significantly older than the victim (perhaps four years older, as the Legislature has prescribed as an element *183 of some sex offenses). J.P.F. argues that by making it a requirement that the victim be a minor, the Legislature must have intended that Megan's Law should apply only if an adult, or at least a significantly older juvenile, engaged in predatory conduct, taking advantage of a youthful victim.
We find this argument unpersuasive. We first note that minority status of the victim under Megan's Law is not unique to criminal sexual contact. A number of the enumerated Megan's Law offenses in N.J.S.A. 2C:7-2b(2) require, either by express provision in that section or by reference to the elements of the listed offense, that the victim must be a minor. So the construction urged by J.P.F. would not necessarily be limited to criminal sexual contact, but might logically lead to non-applicability of Megan's Law for other listed offenses committed by juveniles.
We next note the impracticality and impropriety of judicial line drawing in this context. J.P.F.'s proposal has no basis in law or logic. In J.G. the Court drew a line at age fourteen, based on long-established common law principles and statutory and decisional law developed in accordance with those principles. Thus, the Court rested its rationale on a firm legal foundation. The decision was logical because of the presumed and unresolved criminal incapacity of the juvenile, thus avoiding an absurd result. See also In re Registrant T.S., supra, 364 N.J.Super. at 6-8, 834 A.2d 419 (holding that although kidnapping is listed in N.J.S.A. 2C:7-2b(2) as a Megan's Law offense, where there is no sexual misconduct involved in the kidnapping, Megan's Law applicability was not intended by the Legislature and would be an absurd result.)
The aspect of J.P.F.'s proposal that would establish an adult perpetrator requirement could lead to results essentially the same as those alleged by J.P.F. to be arbitrary in his case. A perpetrator who on his eighteenth birthday committed criminal sexual contact against a victim seventeen years, eleven months old would be subject to Megan's Law. This is no more logical and no less arbitrary than applying Megan's Law to J.P.F. for his offense against V.K.
The aspect suggesting that a juvenile offender must be significantly older than the victim is also illogical. The offense does not involve consensual sexual activity. It is in those situations that an age differential constitutes the culpable and predatory nature of the conduct (e.g., criminal sexual contact under N.J.S.A. 2C:14-3b and N.J.S.A. 2C:14-2c(4), engaging in sexual contact where the victim is at least thirteen but less than sixteen-years-old and the actor is at least four years older than the victim). Where the sexual activity is engaged in by force, it is the force that constitutes the culpable and predatory nature of the conduct. It matters little whether the victim is about the same age, or older or younger than the perpetrator. Perhaps the offense might be more egregious with a large age differential, but without that differential the offense, by its forceful nature, remains predatory and dangerous.
The Legislature has chosen to make criminal sexual contact a Megan's Law offense only if the victim is a minor. As we have stated, this feature is not unique to criminal sexual contact. This evinces a legislative recognition that the need for the protection of the public is particularly significant where child victims are implicated, even for a relatively low-level sex offense. Thus for some of the enumerated offenses the victim's status as a minor is required for Megan's Law to apply.
We find no basis to rewrite Megan's Law as J.P.F. suggests. The line drawing *184 urged by J.P.F. is a legislative, not judicial, function. All fifty states have adopted a version of Megan's Law. In re Registrant J.G., supra, 169 N.J. at 327, 777 A.2d 891. The treatment of juvenile offenders varies significantly from state to state. Id. at 327-30, 777 A.2d 891. Many states have made the registration of juveniles permissive or discretionary; others have established registration and notification provisions for juveniles separate from those for adults. Ibid. Our Legislature has not chosen this course. It has chosen mandatory registration for all juvenile and adult offenders. We find no sound basis to interfere with the Legislature's judgment. See, State in Interest of B.C.L., supra, 82 N.J. at 376, 413 A.2d 335.
The purpose of the Juvenile Code's non-disclosure provision is not undermined by construing Megan's Law in accordance with its plain language. As we have described, "non-disclosure" is actually a misnomer. The Juvenile Code provides for limited disclosure, tailored to provide information to organizations and individuals possessing a legitimate interest in the information and as needed for the proper administration of justice. State v. Allen, supra, 70 N.J. at 482-83, 361 A.2d 5. Under Megan's Law, for juveniles who commit eligible sex offenses, additional notification may occur depending on Tier classification. This additional notification is not permitted to be absolute or indiscriminate. It can be furnished only to organizations and possibly individuals who are likely to encounter the registrant and who are at risk based on the registrant's characteristics and proclivities. N.J.S.A. 2C:7-8c. See Doe, supra, 142 N.J. at 37, 662 A.2d 367; In the Matter of Allegations of Sexual Abuse at East Park High School, 314 N.J.Super. 149, 161-62, 714 A.2d 339 (App.Div.1998).
We harmonize the provisions of the Juvenile Code and Megan's Law by concluding that the Legislature has determined that for Megan's Law offenses it is appropriate to furnish to organizations and individuals with a legitimate need for the information, i.e. protection of the public, more information about the juvenile than otherwise allowed by the Juvenile Code. The carefully circumscribed Megan's Law notification provisions and procedures are designed to promote the administration of justice in this regard. These purposes are not at odds with the limited disclosure provisions of the Juvenile Code.
In 2001, the Legislature adopted legislation, effective in early 2002, establishing an internet registry for sex offenders. N.J.S.A. 2C:7-12 to -19. Inclusion of a registrant on the internet is tantamount to complete, unlimited disclosure. N.J.S.A. 2C:7-13a, b, c. See A.A. ex rel. M.M. v. New Jersey, 341 F.3d 206 (3d Cir.2003). The law generally excludes juveniles from the internet registry. N.J.S.A. 2C:7-13d(1). There are exceptions if the prosecutor can make a specified showing of enhanced risk by clear and convincing evidence. N.J.S.A. 2C:7-13e.
What is important to our analysis, and what bolsters our conclusion that the Legislature does not deem the additional notification flowing from Megan's Law to defeat or frustrate the rehabilitative purpose of the Juvenile Code's non-disclosure provision, is the express legislative finding and declaration in adopting the internet registry law:
The Legislature finds and declares that the public safety will be enhanced by making information about certain sex offenders contained in the sex offender central registry established pursuant to section 4 of P.L.1994, c. 133 (C.2C:7-4) available to the public through the Internet. Knowledge of whether a person is *185 a convicted sex offender at risk of re-offense could be a significant factor in protecting oneself and one's family members, or those in care of a group or community organization, from recidivist acts by the offender. The technology afforded by the Internet would make this information readily accessible to parents and private entities, enabling them to undertake appropriate remedial precautions to prevent or avoid placing potential victims at risk. Public access to registry information is intended solely for the protection of the public, and is not intended to impose additional criminal punishment upon any convicted sex offender.

The Legislature further finds and declares that, in some instances, countervailing interests support a legislative determination to exclude from the Internet registry the registration information of certain sex offenders. For example, the interest in facilitating rehabilitation of juveniles who have been adjudicated delinquent for the commission of one sex offense, but who do not present a relatively high risk of re-offense, justifies the decision to limit public access to information about such juveniles through the Internet. Other instances where the Legislature has determined that making sex offender registry information available to the general public through the Internet would not necessarily serve the public safety purposes of the law include moderate risk offenders whose sole sex offense involved incest or consensual sex. However, in such cases, the legislature deems it appropriate and consistent with the public safety purposes of the law to provide a process that permits inclusion of information about these individuals in the Internet registry where public access would be warranted, based on the relative risk posed by the particular offender.

[N.J.S.A. 2C:7-12 (emphasis added).]
The Legislature has expressly acknowledged the competing interests of non-disclosure, to "facilitate the rehabilitation of juveniles," and disclosure, for "protection of the public." It has balanced those interests by directing some additional disclosure pertaining to juvenile sex offenders. The level of disclosure is carefully geared to the level of danger posed to the public, based on the seriousness of the offense and the characteristics and proclivities of the offender. At the lowest level, Tier 1, the Megan's Law notification is limited to local law enforcement agencies, which is no more extensive than that provided in the Juvenile Code. The notification level gradually escalates commensurate with the escalating need to protect the public. In extreme cases, the need could justify inclusion on the internet registry. The scope of notification beyond Tier 1 is always subject to a case-specific determination by the Superior Court by clear and convincing evidence.
The framework crafted by the Legislature has thus accounted for the competing interests implicated in this case. The purposes of the Juvenile Code and Megan's Law have been balanced in establishing that framework. We will not tamper with it.

D.
In J.G., because of the presumptive and unresolved criminal incapacity of the ten-year-old offender, a construction deviating from the plain language of Megan's Law was required to prevent an absurd result. Whether J.G. understood that his conduct was wrong was undetermined. Those considerations are not present here. J.P.F. was in the fourteen to eighteen-year-old range, and he therefore presumptively possessed the capacity to commit a *186 criminal act. There is no suggestion in the record, and J.P.F. does not argue, that he lacked criminal capacity. When he forcibly engaged in sexual contact with V.K., he understood it was wrong. His culpability, unlike J.G.'s, is not in doubt. There is nothing absurd about subjecting him to Megan's Law and the possibility of some additional disclosure beyond that provided for in the Juvenile Code.
It is, of course, within the Legislature's power to alter the portion of N.J.S.A. 2C:7-2b(2) pertaining to criminal sexual contact along the lines suggested by J.P.F. The Legislature could, for example, diminish the provision's sweep by requiring adult status for the offender. There would be nothing wrong with this approach, even though cases would exist where the offender and victim would be about the same age. Conversely, the Legislature could make the provision more expansive by deleting the requirement that the victim be a minor. This would reflect a legislative judgment that individuals committing this sex offense against any victim, regardless of the victim's age, pose a sufficient threat to the public to fall within the ambit of Megan's Law. Likewise, the Legislature could expand upon the approach taken in J.G. by providing for additional categories of juvenile sex offenders who may apply for early termination of the registration requirement once they reach eighteen. These judgments are for the Legislature, not the courts, to make.
The trial judge lacked discretion to withhold the mandatory requirement of Megan's Law registration from J.P.F.'s disposition. The circumstances of the case provide no occasion for judicial interpretation of N.J.S.A. 2C:7-2b(2) at variance with its plain language. We reverse on the State's cross-appeal and remand for modification of the disposition to include the requirement that J.P.F. shall be subject to Megan's Law.
Affirmed on J.P.F.'s cross-appeal. Reversed on the State's appeal.
NOTES
[1] The juvenile's second point of argument is that the victim's age was not proven in the Family Part proceedings, thus precluding application of Megan's Law for the offense of which he was adjudicated delinquent. The State's position is that the victim's age was undisputed in the Family Court proceedings. Counsel for the juvenile concedes that proof of the victim's age was not required in the adjudicatory hearing because her age is not an element of the offense. At oral argument before us, counsel for the juvenile agreed that if the prosecutor could produce a birth certificate verifying that the victim was under eighteen on the date of the offense, this issue would be resolved adversely to the juvenile. The prosecutor has furnished a birth certificate to us, which establishes that V.K.'s date of birth was February 14, 1985.