NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5063-14T3

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

S.B.,

    Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 22, 2016**
>
> **APPELLATE DIVISION**

Submitted February 1, 2016 - Decided March 22, 2016

Before Judges Lihotz, Nugent and Higbee.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 14-09-0629.

Geoffrey D. Soriano, Somerset County Prosecutor, attorney for appellant (Kimberly Savino French, Assistant Prosecutor, of counsel and on the brief).

Alison Perrone, attorney for respondent.

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

The State appeals from a June 25, 2015 Law Division order dismissing Indictment No. 14-09-0629, which charged defendant S.B. with prohibited participation in a "youth serving

organization" in violation of N.J.S.A. 2C:7-23(a).[1] It is undisputed that as a result of a prior sexual assault conviction, defendant must comply with the requirements of the Community Notification Law, N.J.S.A. 2C:7-1 to -23, also known as Megan's Law.[2] Defendant acknowledges he is subject to the requirements contained in N.J.S.A. 2C:7-23, which provide:

> a. Except as otherwise provided in subsection e. of this section, it shall be unlawful for an excluded sex offender[3] to hold a position or otherwise participate, in a paid or unpaid capacity, in a youth serving organization.
>
> b. A person who violates subsection a. of this section is guilty of a crime of the third degree.

---

[1] Notably, the effective date of N.J.S.A. 2C:7-22, -23 was October 19, 2009. L. 2009, c. 139, § 1-2. This casts doubt on the portion of the indictment charging conduct from August 9 to October 18, 2009.

[2] Megan's Law requires "prescribed categories of sex offenders [to] register with law enforcement agencies through a central registry maintained by the Superintendent of State Police." In re Registrant N.B., 222 N.J. 87, 89 (2015) (citing N.J.S.A. 2C:7-2(a)(1), 4(d)).

The record shows defendant was fully compliant with the registration requirements under Megan's Law as a sex offender, N.J.S.A. 2C:7-2.

[3] Defendant acknowledges he is an "excluded sex offender," which is defined as "a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for the commission of a sex offense, as defined in [N.J.S.A. 2C:7-2], which involves a victim under 18 years of age." N.J.S.A. 2C:7-22.

c. A person who knowingly hires, engages or appoints an excluded sex offender to serve in a youth serving organization in violation of subsection a. of this section is guilty of a crime of the fourth degree.

d. The provisions of this act shall not apply to participation by an excluded sex offender under 18 years of age in a youth serving organization which provides rehabilitative or other services to juvenile sex offenders.

e. It shall not be a violation of subsection a. of this section for an excluded sex offender to serve in a youth serving organization if the excluded sex offender is under Parole Board supervision and the Parole Board has given express written permission for the excluded sex offender to hold a position or otherwise participate in that particular youth serving organization.

The sole question for our determination is whether a youth ministry associated with a church, where defendant is a congregant volunteer, is a "youth serving organization," defined to "mean[] a sports team, league, athletic association or any other corporation, association or organization, excluding public and nonpublic schools, which provides recreational, educational, cultural, social, charitable or other activities or services to persons under 18 years of age." N.J.S.A. 2C:7-22. For the reasons set forth in this opinion, we conclude it is not and affirm.

The facts alleged as sustaining the charge are not disputed. Defendant was a congregant of the Eternal Life Christian Center, a non-profit religious institution registered under Section 501(c)(3) of the Internal Revenue Code. As required by Megan's Law, defendant notified the pastors and elders of his prior sexual assault convictions.

Defendant participated in church activities placing him in contact with parishioners under the age of eighteen. As a volunteer, defendant served as a youth leader, counselor, mentor, and chaperone for children from ages twelve to seventeen for the No Limits Youth Ministry. More specifically, defendant supervised and mentored children at various scheduled events of the No Limits Youth Ministry, such as outings, movie nights, concerts, youth group meetings, and day camp.

Defendant moved to dismiss the indictment, arguing the No Limits Youth Ministry was not a youth serving organization. Judge Julie Marino agreed and dismissed the indictment for the reasons stated in a written opinion accompanying the order.

On appeal, the State argues:

> THE TRIAL COURT IMPROPERLY DISMISSED INDICTMENT NO. 14-09-00629-I AS THE NO LIMITS YOUTH MINISTRY IS A YOUTH SERVING ORGANIZATION AS SET FORTH IN N.J.S.A. 2C:7-22.

A question regarding the interpretation of a statute is a legal one. State v. Revie, 220 N.J. 126, 132 (2014). "As such, we review the dispute de novo, unconstrained by deference to the decisions of the trial court . . . ." State v. Grate, 220 N.J. 317, 329 (2015).

When we interpret a statute, "[t]he overriding goal is to determine as best we can the intent of the Legislature, and to give effect to that intent." State v. Robinson, 217 N.J. 594, 604 (2014) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)). First, we consider the plain language of the statute.

> In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the [L]egislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.
>
> [N.J.S.A. 1:1-1.]

We apply common sense in divining the meaning of the Legislature's chosen language, drawing inferences based on the statute's structure and composition. State v. Hupka, 203 N.J. 222, 232 (2010); State v. Gandhi, 201 N.J. 161, 180 (2010) (quoting State v. Thomas, 166 N.J. 560, 567 (2001)) ("Ordinarily, when a statute's language appears clear, 'we need

delve no deeper than the act's literal terms to divine the Legislature's intent.'").

Second, "[i]f a plain-language reading of the statute 'leads to a clear and unambiguous result, then our interpretive process is over.'" Hupka, supra, 203 N.J. at 232 (quoting Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195-96 (2007)). On the other hand, if we find an ambiguity in the statutory language, we then turn to extrinsic evidence. Ibid. When such evidence is needed, we look to a variety of sources, "such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent." Thomas, supra, 166 N.J. at 567 (quoting Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 323 (2000)). See also State v. Crawley, 187 N.J. 440, 453 (resorting to legislative history and related statutes as extrinsic aids to interpret statute), cert. denied, 549 U.S. 1078, 127 S. Ct. 740, 166 L. Ed. 2d 563 (2006).

Third, where "the Legislature has clearly defined a term, the courts are bound by that definition." Febbi v. Bd. of Review, 35 N.J. 601, 606 (1961). We consider "not only the particular statute in question, but also the entire legislative scheme of which it is a part." Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129 (1987).

Further,

> [w]here a criminal statute defining a crime is at issue, language "susceptible of differing constructions," must be interpreted "to further" the "general purposes" stated in N.J.S.A. 2C:1-2(a) and the "special purposes" of the provision at issue. N.J.S.A. 2C:1-2(a), (c). Most important here is the Code's purpose of giving "fair warning of the nature of the conduct proscribed," N.J.S.A. 2C:1-2(a)(4). Fair notice of prohibited conduct is the fundamental principle underlying the rule of construction calling for resolution of ambiguities in criminal statutes against the State. State v. Gelman, 195 N.J. 475, 482 (2008).
>
> [State v. J.B.W., 434 N.J. Super. 550, 554 (App. Div. 2014).]

This court examined a similar question in State v. J.B.W. We examined whether a registered offender violated the statute when participating in a high school marching band pit crew, whose members "work[ed] in cooperation with a public school and its staff to promote a school program." Id. at 553. We concluded the pit crew was a youth serving organization, as the "the definition reaches all organizations except schools" and the statute does not suggest "an exemption for persons who volunteer to help in a school activity by virtue of a position they hold in an organization that is not in fact a school." Id. at 555, 557. We observed:

> If the Legislature intended to exclude from the reach of this crime associations that

7

> have connections with or assist a school similar to the arrangement enjoyed by this association, then it could have done that. For example, the Legislature could have stated that it was excluding public and nonpublic schools and organizations participating with or assisting public or nonpublic schools. But the Legislature did not so provide.

[Id. at 555-56.]

Therefore, an organization for youth, affiliated with, but distinct from a school, met the statutory definition of youth serving organization. Id. at 555.

Undergoing a similar analysis of the facts in this matter, Judge Marino found the No Limits Youth Ministry was not independent from the church, but merely a subset of the church. Unlike the pit crew in J.B.W., the No Limits Youth Ministry does not have a board of directors or by-laws. Nor does it have registration or dues requirements for membership. Leaders for the ministry encompass volunteer congregants of the church, the pastor and church elders. Further, the church's structure identifies the youth department "as a branch of the activities of the assembly"; there is no entity or association distinct and separate from the church. Finally, defendant complied with his notice obligations, by informing the church's pastor of his status.

To reach the outcome suggested by the State that the broad definition of a youth serving organization under N.J.S.A. 2C:7-22 encompasses the No Limits Youth Ministry requires this court to redraft the plain, unambiguous language of the statute. The statutory definition lists various types of activities sought to be included within the definition, but makes no reference to churches or religious organizations.[4] Further, the facts as found by Judge Marino, supported by the evidence of record, show the No Limits Youth Ministry is not an independent organization, but inescapably a function of the church, administered by the church's pastor and elders.

Consequently, we must reject the State's statutory interpretation that the church's youth ministry is included within the statutory definition of youth serving organization. "[A] court may not rewrite a statute or add language that the Legislature omitted." State v. Munafo, 222 N.J. 480, 488 (2015). See also Cashin v. Bello, 223 N.J. 328, 335 (2015) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)) ("A court 'may neither rewrite a plainly-written enactment of the

---

[4] The State's reliance on the comment youth serving organizations "reach[] all organizations except schools," J.B.W., supra, 434 N.J. Super. at 555, as referencing inclusion of religious organizations and churches ignores the context of the statement as well as the fact religious organizations were not considered by the court.

Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'"). It is axiomatic "that the wisdom, good sense, policy and prudence (or otherwise) of a statute are matters within the province of the Legislature and not of the Court." In re Expungement Petition of J.S., 223 N.J. 54, 78 (2015) (quoting State v. Gerald, 113 N.J. 40, 84-85 (1988)).

This result would not change were we to conclude the definition of a youth serving organization is sufficiently ambiguous to warrant reliance on extrinsic aids. The Legislature sought to specifically reference religious organizations in other Megan's Law requirements, but omits such a reference in N.J.S.A. 2C:7-22. For example, N.J.S.A. 2C:7-8, which mandates notification for various sex offenders, provides:

> c.  The regulations shall provide for three levels of notification depending upon the risk of re-offense by the offender as follows:
>
> (1) If risk of re-offense is low . . . .
>
> (2) If risk of re-offense is moderate, organizations in the community including schools, religious and youth organizations shall be notified in accordance with the Attorney General's guidelines . . . .
>
> [N.J.S.A. 2C:7-8(c) (emphasis added).]

The distinction made in these two provisions of Megan's Law's statutory scheme and within N.J.S.A. 2C:7-8(c) itself reflect the Legislature's intentional demarcation, separating religious ministries from youth serving organizations. "[The Legislature] is presumed to [be] 'thoroughly conversant with its own [prior] legislation and the judicial construction of its statutes.'" State v. Goodwin, 224 N.J. 102, 113 (2016) (alterations in original) (quoting J.S., supra, 223 N.J. at 75). Therefore, the omission of religious organizations and churches from the definition of a youth serving organization was intentional and not inadvertent. GE Solid State v. Dir., Div. of Taxation, 132 N.J. 298, 308 (1993) ("Under the established canons of statutory construction, where the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.").

Importantly, N.J.S.A. 2C:7-8 was enacted on October 31, 1994, L. 1994, c. 128, § 3, well-before N.J.S.A. 2C:7-22 and -23 were made effective on October 19, 2009, L. 2009, c. 139, § 1-2. The timing of the enactments reinforces the deliberate exclusion of religious organizations when defining youth serving organizations. See State v. Drury, 190 N.J. 197, 214-15 (2007) (finding the Legislature's failure to add language used in previous provisions to subsequent enactments was intentional).

Understanding a court's specific obligation to "balance its fundamental duty not to substitute its views for those expressed by the Legislature in the language the Legislature selected in enacting a statute," State v. Friedman, 209 N.J. 102, 118 (2012), we guard against a suggestion to render an opinion on whether the law as written represents sound social policy, as that role is reserved to our elected representatives.[5] If the Legislature determines the omission was inadvertent and desires to include religious institutions in the definition of a youth serving organization, it must act to amend N.J.S.A. 2C:7-22. J.S., supra, 223 N.J. at 59, 78. See also DiNapoli v. Bd. of Educ. of Twp. of Verona, 434 N.J. Super. 233, 238 (App. Div.)

_____

[5] Notably, N.J.S.A. 2C:7-23 precludes a registrant from participating in youth serving organizations without regard to his or her perceived risk of re-offense. Also, other community notification provisions of Megan's Law exist to alert religious organizations of an individual's sex offender status. See N.J.S.A. 2C:7-8(c) (establishing "three levels of notification depending on the risk of re-offense by the offender"). We observe Megan's Law does not require religious organizations be notified where an offender is perceived to have a low risk of re-offense. N.J.S.A. 2C:7-8(c)(1) (requiring notification only to law enforcement agencies where risk of re-offense is low). However, as to offenders posing a moderate or high rise of re-offense, religious and youth organizations would receive notification. N.J.S.A. 2C:7-8(c)(2), (3). We must assume the Legislature considered notification requirements for persons at moderate or high risk for re-offense sufficient to effectuate the statutory purpose "to protect the community from the dangers of recidivism by sexual offenders." State ex rel. J.P.F., 368 N.J. Super. 24, 35 (App. Div.), certif. denied, 180 N.J. 453 (2004).

("Courts should be extremely reluctant to add terms to a statute, lest they usurp the Legislature's authority."), certif. denied, 217 N.J. 589 (2014).

Defendant also notes the youth ministry in his church is defined as part of the church's functions, a fact found by the judge to be supported by the church's by-laws, which provide the youth department is a "part of the church," falling "under the general supervision of the Senior Pastor and Executive Board and shall be conducted as a branch of the activities of the assembly." Accordingly, defendant's volunteer activities were for and part of the church, an organization not mentioned within N.J.S.A. 2C:7-22.[6]

We are mindful of a grand jury's independence and our "expressed . . . reluctance to intervene in the indictment

---

[6] We observe the Legislature's exclusion of churches and religious organizations from the statutory definition may have been intended to avoid any suggestion the statute violated the Free Exercise Clause of the Constitution, which states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. I. See also N.J. Const. art. I, ¶ 3 ("No person shall be deprived of the inestimable privilege of worshipping Almighty God in a manner agreeable to the dictates of his own conscience; nor under any pretense whatever be compelled to attend any place of worship contrary to his faith and judgment[.]").

Understanding the Legislature is presumed to act in a constitutional manner, State v. Fortin, 198 N.J. 619, 631 (2009), the omission, in part, may have been designed to avoid a possible unconstitutional infringement upon an individual's right to freely attend religious services or activities.

process." State v. Hogan, 144 N.J. 216, 228 (1996). Nevertheless, "[t]he absence of any evidence to support the charge[] would render the indictment 'palpably defective' and subject to dismissal." State v. Saavedra, 222 N.J. 39, 56 (2015) (quoting State v. Morrison, 188 N.J. 2, 12 (2006)). Our review, in light of the record and applicable law, reveals no basis to disturb Judge Marino's conclusion. The indictment must be dismissed because the State failed to present prima facie evidence establishing the elements of the crime charged. Morrison, supra, 188 N.J. at 12-13.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION