# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4541-18T1

STATE OF NEW JERSEY
IN THE INTEREST OF R.J.,
a Juvenile.

_____

Submitted May 28, 2020 – Decided June 19, 2020

Before Judges Koblitz and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket Nos. FJ-19-0166-18 and FJ-19-0072-19.

Patti & Patti, LLC, attorneys for appellant (Jeffrey Michael Patti, of counsel and on the briefs).

Francis A. Koch, Sussex County Prosecutor, attorney for respondent (Shaina Brenner, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

R.J. appeals from a March 4, 2019 adjudication of delinquency for acts which, if committed by an adult, would constitute possession of a firearm for an illegal purpose, N.J.S.A. 2C:39-4; aggravated assault, N.J.S.A. 2C:12-1(b)(4); terroristic threats, N.J.S.A. 2C:12-3(a); criminal mischief, N.J.S.A. 2C:17-

3(a)(1); and harassment, N.J.S.A. 2C:33-4(c) arising from an incident with his girlfriend K.R. He also appeals from a May 7, 2019 order denying his motion for a new trial. We affirm.

This matter was tried for four days during which the State presented seven witnesses, and R.J. presented the testimony of his mother and brother. R.J. did not testify, but his voluntary statement to police was admitted into evidence.

The underlying incident occurred in March 2018, when R.J. sent K.R. a picture via Snapchat depicting her mother's sweatshirt with the words "fuck you" spray-painted across it. This prompted K.R. to drive her grandmother's vehicle to R.J.'s home in an attempt to retrieve the sweatshirt. As K.R. waited in R.J.'s driveway, he emerged and began to yell at her. He retrieved a shovel and a chain from the garage and began striking K.R.'s car with them before resorting to hitting and kicking the car. He retrieved a BB gun, fired it at the windshield several times, and held the gun to K.R.'s temple, bruising her cheekbone in the process. R.J. also wrenched the driver's side window, rendering it inoperable.

R.J.'s brother, who was playing a loud video game inside the residence, did not witness the assault but heard muffled shouts coming from the driveway, saw K.R.'s car, and saw R.J. pacing in front of it. The brother alerted his mother who observed a snow shovel under the vehicle. According to R.J.'s mother, K.R.

advised her that she was there to retrieve her sweatshirt. R.J.'s mother testified she asked R.J. to go back inside the residence and K.R. to leave multiple times, but K.R. just stared ahead, emotionless, until eventually leaving after receiving the sweatshirt.

K.R.'s vehicle suffered damage to its hood, driver's side door, and roof. Her grandmother and an auto repair technician testified to the extent of the damage and repairs, which approximated $3000. The grandmother also observed the bruise on K.R.'s cheek.

K.R. testified she and R.J. continued to communicate following the incident. During one of their communications, K.R. asked R.J. whether he would have pulled the trigger on the BB gun when it was against her head and he responded, "it doesn't matter. I should have." A few days later, K.R. was admitted to a psychiatric facility for harming herself.

Following K.R.'s release, her mother contacted Sparta Township Police, who began an investigation. Detectives interviewed R.J. and he voluntarily gave a statement admitting to kicking K.R.'s car and putting a shovel under it. The Sussex County Prosecutor's Office executed a search warrant of R.J.'s residence and recovered the BB gun, which was tested and found to be operational. The chain and shovel were obtained from R.J.'s attorney prior to the trial.

A-4541-18T1

The trial judge made extensive findings, which we summarize here. The judge found K.R.'s testimony credible because she admitted she could not recall certain details relating to the incident, which she could have fabricated to her advantage. By example, the judge noted K.R. could not remember the color of the shovel R.J. used during the assault, yet the actual shovel was present in court during her testimony and visible to her. She also could not remember the length of the chain R.J. used to damage the car. However, the judge found K.R. credible because it was reasonable for her not to recollect, considering the rapid succession of events during the rampage and the trauma she experienced, including having a gun put to her head.

The judge found the traumatic nature of the event was also corroborated by R.J.'s mother, who testified to K.R.'s non-responsiveness during the incident, which the judge found unsurprising. The judge also found K.R.'s testimony consistent with R.J.'s statement to police in which he admitted he was mad and kicked her car, as well as messages K.R. and R.J. exchanged after the incident in which he admitted threatening her with the gun.

The judge concluded the testimony of R.J.'s brother and mother did not detract from K.R.'s credibility because they arrived after the rampage. He found the State's witnesses credible.

The trial judge concluded the State proved all of the statutory elements of the offenses charged. The State proved the weapons offense because a detective testified the BB gun was tested and operable, and K.R.'s testimony and the text messages exchanged between her and R.J. after the incident established that he fired the weapon at her vehicle and held it against her head. The judge also found the State proved the aggravated assault charge because R.J. knowingly pointed the gun at K.R.'s head, shot at the vehicle, held the gun to her head and admitted he should have pulled the trigger, which "manifested extreme indifference to the value of human life." The judge also found R.J. committed terroristic threats and made the following findings:

> Using the firearm to shoot at the vehicle and then hold [it] against [K.R.]'s head expresses far more than fleeting anger or an effort to alarm. His intent to convey menace and fear is confirmed again by his words the following day when he responds to her text message that he should have pulled the trigger.
>
> . . . .
>
> [R.J.] admits numerous times in his statement to [police] that he was pissed, mad, angry, irritated, that he made threatening movements and that he undertook actions against [K.R.] out of spite. While he denied . . . using the weapon, as referenced above, his attempt to blunt his damning Snapchat and [comment] about wishing to pull the trigger undercut[] his assertion that he did not use the weapon. [K.R.] was credible in her description about how he used the weapon to first shoot

at her vehicle and then hold it against her temple while he continued to yell at her.

The trial judge found the State proved criminal mischief, crediting the testimony of K.R., her grandmother, and the auto repair technician, which established the nature of the damage to the vehicle and the cost to repair it. The judge found the vehicle was K.R.'s property because it was under her "regular dominion and control." He concluded the damage occurred from R.J. kicking the vehicle and striking it with the shovel and credited K.R.'s testimony that R.J. used a chain during the incident because

> [t]he chain appears to be something [R.J.] regularly utilizes in connection with his martial arts fighting skills. The description by his attorney during the proceeding of somebody who wouldn't even weigh 100 pounds soaking wet is not the observations that this [c]ourt made of this young man sitting before the [c]ourt for many days. He appears to be athletic, muscular, and in good shape.

> [K.R.] testified about [R.J.]'s knowledge of martial arts and [R.J.] did not dispute his martial arts knowledge during his videotaped statement when it was mentioned by [a detective]. [R.J.] was upset that [K.R.] had come to his house that evening demanding the return of the sweatshirt after he had texted her a picture with the words "fuck you" written on it, and he admitted that he had put those words there. They exchanged words in the driveway. His emotions escalated to a point at which he damaged the vehicle by kicking it, striking it with the shovel, and striking it with the chain.

6

The trial judge concluded the State proved harassment because R.J. admitted he threatened to burn the sweatshirt, defaced it by spraying an expletive on it, and sent K.R. a picture of the sweatshirt out of spite.  The judge concluded "[t]hese actions represent a course of conduct undertaken with the purpose to worry and trouble [K.R.] . . . [R.J.'s] actions in making the repeatedly unwanted communications about the sweatshirt represented an intolerable interference with the expectation of privacy of [K.R.]"

R.J. raises the following points on appeal:

> POINT I - APPELLANT R.J.'S APPEAL IS APPROPRIATE AS A TIMELY MOTION FOR NEW TRIAL WAS MADE TO THE TRIAL COURT PURSUANT TO R. 2:10-1.
>
> POINT II – K.R. GAVE MULTIPLE DIFFERENT STATEMENTS AND WAS UNABLE TO RECALL SIMPLE, BUT ESSENTIAL, KEY FACTS AT TRIAL BUT THE COURT IGNORED ALL INCONSISTENCIES AND LACK OF RECALL AND GAVE HEAVY WEIGHT TO HER HIGHLY INCONSISTENT AND UNRELIABLE TESTIMONY.
>
> POINT III - THE COURT DID NOT PROPERLY WEIGHT K.R.'S PSYCHIATRIC RECORDS AND INSTEAD MADE UNSUPPORTED INFERENCES TO MAKE K.R. APPEAR MORE CREDIBLE.
>
> POINT IV – TRIAL TESTIMONY OF R.J.'S BROTHER [] AND HIS MOTHER [] WAS NOT AFFORDED THE WEIGHT IT DESERVED WITHOUT ANY REAL EXPLANATION.

7

POINT V - THE TRIAL COURT MADE WILD AND UNSUBSTANTIATED LOGICAL LEAPS TO JUSTIFY ITS FINDING OF DELINQUENCY AND BASED UPON THE TESTIMONY OF K.R., THERE IS NO WAY R.J. COULD HAVE CAUSED THE DAMAGE DEPICTED IN THE PICTURES ADMITTED AS EVIDENCE.

Our standard of review in juvenile delinquency bench trials "is narrow and is limited to evaluation of whether the trial judge's findings are supported by substantial, credible evidence in the record as a whole." State in Interest of J.P.F., 368 N.J. Super. 24, 31 (App. Div. 2004) (citing State v. Locurto, 157 N.J. 463, 471 (1999)). We do not engage in an independent assessment of the evidence as if "[we] were the court of first instance." State v. Johnson, 42 N.J. 146, 161 (1964). Rather, we give special deference to the trial judge's findings, particularly those that are substantially influenced by the judge's opportunity to observe the witnesses directly. Id. at 162.

The gravamen of the arguments raised on appeal challenge the trial judge's credibility findings. Having considered these arguments in light of the record and the deference we must afford to a trial court's credibility determinations; we affirm substantially for the reasons expressed in the judge's thorough and well-reasoned oral opinion.

We add that R.J.'s assertions that the judge did not accord enough weight to K.R.'s psychiatric records are unpersuasive. The judge considered K.R.'s records from her stay in a psychiatric facility following the incident. However, those records corroborated the judge's findings relating to the traumatic nature of the incident. Indeed, the judge stated: "While [K.R.] was hospitalized, she explained to the hospital staff that the root cause of a lot of her problems [was] the incredibl[y] dysfunctional relationship with R.J. . . ."

R.J. argues the trial judge's conclusions regarding K.R.'s credibility could not be drawn without expert testimony on the effect of trauma on memory and recall. He also argues that because K.R. was hospitalized and her records indicated drug use, her testimony was untruthful. However, R.J.'s counsel stated K.R.'s mental health was not an issue, did not challenge her competency to testify, and stated the admission of her psychiatric records into evidence was "purely for impeachment." Expert testimony was not required to consider the materiality of K.R.'s medical records.

Finally, in juvenile delinquency matters, the State bears the burden of proving all elements of the offenses charged beyond a reasonable doubt. N.J.S.A. 2C:1-13(a). The trial judge's conclusions that the State proved the

statutory elements of each offense are supported by the adequate, substantial and credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4541-18T1