NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5779-17T2

DIGITAL FIRST MEDIA,
d/b/a THE TRENTONIAN,

     Plaintiff-Appellant,

v.

EWING TOWNSHIP and
KIM J. MACELLARO, RMC,
in her capacity as Municipal
Clerk and Records Custodian
for Ewing Township,

     Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

February 19, 2020

APPELLATE DIVISION

Argued May 22, 2019

Before Judges Alvarez and Mawla.

Reargued November 21, 2019 – Decided February 19, 2020

Before Judges Alvarez, Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0495-18.

CJ Griffin argued the cause for appellant (Pashman Stein Walder Hayden, PC, attorneys; CJ Griffin, of counsel and on the briefs).

Wade Donald Koenecke argued the cause for respondents (Stevens & Lee, PC, attorneys; Patrick D.

Kennedy and Maeve Ellen Cannon, of counsel and on the brief; Wade Donald Koenecke and Michael A. Cedrone, on the briefs).

Suzanne Marie Davies, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Raymond R. Chance, Assistant Attorney General, of counsel; Suzanne Marie Davies, on the brief).

Gibbons PC and American Civil Liberties Union of New Jersey, attorneys for amicus curiae American Civil Liberties Union of New Jersey (Jeanne LoCicero and Alexander Shalom, of counsel and on the brief; Sylvia-Rebecca Gutierrez, on the brief).

Mc Cusker Anselmi Rosen & Carvelli PC, attorneys for amici curiae Reporters Committee for Freedom of the Press (Bruce S. Rosen, on the brief).

The opinion of the court was delivered by

ALVAREZ, P.J.A.D.

Plaintiff Digital First Media, doing business as the Trentonian, filed a verified complaint and order to show cause under the Open Public Records Act of 2001 (OPRA), N.J.S.A. 47:1A-1 to -13, and the common-law right of access to public records, seeking to compel the production of use of force reports (UFRs) regarding the arrest of a sixteen-year-old suspect. The defendants are Ewing Township and the municipal clerk and records custodian, Kim Macellaro, RMC. Defendants denied access on the basis that the records contained confidential information pertaining to a juvenile charged as a

delinquent, and were therefore available only by application to the Family Part.  See Rule 5:19-2 and N.J.S.A. 2A:4A-60.  Finding that the rule and statute preserving a juvenile's anonymity barred disclosure under OPRA, the Law Division judge dismissed the complaint on July 18, 2018.

We now reverse, concluding that when police employ force against a minor charged as a delinquent, redaction of his or her name on the UFR satisfies both the public's right to access important information regarding police conduct and a juvenile's right to privacy, which is mandated by statute and court rule.  We remand for further proceedings to address the Trentonian's request for counsel fees and costs.

As the judge explained, the legislative policy protecting a juvenile's privacy stems from the concern that public disclosure might "have a harmful impact on the rehabilitation of a juvenile offender."  See State ex rel. B.C.L., 82 N.J. 362, 375-76 (1980).  The judge also opined that the juvenile confidentiality statute takes precedence over OPRA under the theory of statutory construction that the specific supersedes the general.  See State v. Robinson, 217 N.J. 594, 609 (2014); see also State ex rel. D.M., 451 N.J. Super. 415, 426 (App. Div. 2017).  The public's right to know was a "generalized interest," while the juvenile's need for privacy "comes out in the balance."

Further examining the Trentonian's claim under the common-law right of access, the judge determined that the newspaper was not entitled to relief. The judge reasoned that although the public's right to know is a paramount consideration, since the Trentonian had the option of filing a motion in the Family Part to obtain the UFR, a mechanism was available to advance that interest, while preserving the juvenile's confidentiality.

The judge also noted only the Juvenile Justice Commission (JJC) has access to a juvenile parole officer's UFR. The JJC, within the Department of Law and Public Safety,[1] adopted N.J.A.C. 13:97-1.4, which "tracks" Rule 5:19-2 and N.J.S.A. 2A:4-60, in order to "strictly safeguard[]" those records "from public access." Thus, she entered judgment in favor of defendants.

I.

Some context is necessary. The Attorney General's authority to oversee police conduct is legislatively mandated. See N.J.S.A. 52:17B-97 to -117. The Attorney General's responsibilities include representation of State agencies. See N.J.S.A. 52:17A-4.

The Attorney General issued use of force guidelines regulating law enforcement in 1985 and revised them in 2000. The guidelines defined

---

[1] Stating the obvious, the Department of Law and Public Safety is headed by the Attorney General. N.J.S.A. 52:17B-5. The JJC "is established in, but not of, the Department of Law and Public Safety." N.J.S.A. 52:17B-170(a).

categories of force. Among other things, police must file a one-page UFR "[i]n all instances when physical, mechanical or deadly force is used[]" during a confrontation between police personnel and a civilian,[2] referred to on the form as the "subject." We have attached a blank copy of the Attorney General's model UFR to this decision. Because police departments are required by law to file UFRs, the public is entitled to access under OPRA. O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 385 (App. Div. 2009). Neither the guidelines nor the model form distinguish between UFRs filed when force is used against minors as opposed to adults.

Interested parties can obtain records "pertaining to juveniles charged as delinquents" only by following the process in Rule 5:19-2(b):

> [R]ecords of the court, Probation Division, and law enforcement agencies pertaining to juveniles charged as delinquents shall be strictly safeguarded from public inspection and have to be made available only pursuant to N.J.S.A. 2A:4A-60 to -62. Any application for such records shall be made by motion to the court.

Read together, the rule and N.J.S.A. 2A:4A-60 establish the limited circumstances in which, by formal motion to the Family Part, an interested

---

[2] Throughout this opinion we use the phrase "adult UFR" and "juvenile UFR" to distinguish between forms filed when the arrestee is an adult as opposed to a juvenile. The reference, however, is to the same form.

party may obtain otherwise protected juvenile records from "the court, Probation Division, and law enforcement agencies . . . ."

Confidentiality can be pierced when outweighed by other important interests. Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 5:19-2(b) (2020). The statute itself, N.J.S.A. 2A:4A-60, sets forth instances in which records may be shared, with whom, and who may attend delinquency hearings. It is noteworthy that, as set forth in N.J.S.A. 2A:4A-60(f), "the public's right to be informed" may be weighed more heavily in the balance against a minor's privacy interests and "prospects of rehabilitation" if the minor committed a crime of the first, second, or third degree. State ex rel. K.B., 304 N.J. Super. 628, 631 (App. Div. 1997); N.J.S.A. 2A:4A-60(f). To prevent public disclosure under subsection (f) of the statute, the juvenile "must demonstrate a substantial likelihood that specific and extraordinary harm would result from such disclosure in the specific case." K.B., 304 N.J. Super. at 631. The minor "must make a showing of significant detriments flowing to the individual that are both sufficiently grave and person- and situation-particular, i.e., not shared by juvenile defendants in general." Id. at 634. This is a difficult test to meet. See id. at 632-33.

Dicta in O'Shea mentions regulations making some UFRs "'confidential' and not subject to OPRA." 410 N.J. Super. at 384. Specifically, pursuant to regulatory powers vested by N.J.S.A. 52:17B-170(e)(22), the JJC

> has promulgated use-of-force policies for its juvenile parole officers, N.J.A.C. 13:96-3.1 to -11, and for its investigators, N.J.A.C. 13:97-2.1 to -11, that are similar to the [Attorney General's] Use of Force Policy. Those regulations expressly state that an officer regulated "shall complete a . . . Use of Force Report when he or she participated in, or witnessed, [any use of force]," N.J.A.C. 13:96-3.6 and 13:97-2.6, but then deem such reports "confidential" and not subject to OPRA. N.J.A.C. 13:96-1.4 and 13:97-1.4.
>
> [Id. at 384-85 (alterations in original).]

## II.

On appeal, plaintiff argues that redacted UFRs do not come under the purview of the rule and statute regarding juvenile records because they do not "pertain" to the juvenile, but to police conduct. Amici curiae the Reporters Committee for Freedom of the Press and 22 Other Media Organizations agree, and add that public access to UFRs regarding juvenile arrests will better serve the public by providing a measure of clarity and oversight in this important arena. The American Civil Liberties Union of New Jersey, which also filed a brief in support of plaintiff's appeal, asserts that allowing access to a juvenile UFR advances OPRA's mandate because of the importance of public oversight

of police conduct—but that it should have in any event been allowed under the common-law right of access.

Defendants counter that the rule and statutes control because the UFR at issue pertains to juvenile records. They further argue that the complaint was procedurally defective because the request should have been initiated through the Family Part, balancing the public's interest in oversight of police conduct while preserving a juvenile's privacy.

In its amicus curiae filing, the Attorney General draws our attention to various agency public statements highlighting the purpose of UFRs to provide transparency regarding law enforcement conduct, not regarding criminal activity. See Gurbir S. Grewal, Joint Statement of New Jersey Law Enforcement Leaders, (December 5, 2018), https://www.nj.gov/oag/newsreleases18/pr20181205b.html; see also S.P. Sullivan, NJ.com probe of police force 'nothing short of incredible,' N.J.'s top cop says. Now, he's promising major reform, NJ.COM (Nov. 30, 2018), http://www.nj.com/news/2018/11/njcom-probe-of-police-force-nothing-short-of-incredible-njs-top-cop-says-now-hes-promising-major-reform.html.

Accordingly, the Attorney General takes the position on appeal that redacting a UFR involving a juvenile subject would readily preserve the minor's confidentiality and the public's strong interest in transparency. At oral

argument, we were advised that some municipalities already provide redacted juvenile UFRs when requested.

## III.

We review a trial court's decisions in OPRA matters de novo. Wronko v. N.J. Soc'y for Prevention of Cruelty to Animals, 453 N.J. Super. 73, 79 (2018) (quoting Paff v. N.J. State Firemen's Ass'n, 431 N.J. Super. 278, 286 (App. Div. 2013); O'Shea, 410 N.J. Super. at 379).

In North Jersey Media Group, Inc. v. Township of Lyndhurst, the Court reiterated that OPRA embodies the principle of broad access to public records in the public's interest. 229 N.J. 541, 555 (2017). Limitations are to be construed in favor of transparency, and it is the public agencies that bear the burden of demonstrating, "a clear showing," that denial of the OPRA request is required by law. Ibid. (quoting Asbury Park Press v. Ocean Cty. Prosecutor's Office, 374 N.J. Super. 312, 329 (Law Div. 2004)). Government records are accessible to the public under OPRA unless exempted by provisions within the law or application of another statute. N.J.S.A. 47:1A-1.

Although the language in Lyndhurst concerns exemptions to disclosure found within OPRA itself, there is no reason to distinguish the standard from decisions regarding exemptions found in unrelated statutes. Therefore, it is

defendants' burden to make a clear showing that N.J.S.A. 2A:4A-60 creates an exemption to OPRA. No showing has been made, much less a clear showing.

To begin, Rule 5:19-2(b) addresses information "pertaining to juveniles charged as delinquents . . . ." The statute employs similar language, expanding the universe of records to "be strictly safeguarded from public inspection" to include those pertaining to "juveniles" who are "found to be part of a juvenile-family crisis . . . ." N.J.S.A. 2A:4A-60. Not all minors against whom police would employ force necessarily fall into those categories.

Additionally, the Attorney General's reading of the interplay between OPRA and the rule and statute, although not dispositive, is more than informative. See Shaw v. Shand, 460 N.J. Super. 592, 617-18 (App. Div. 2019). We give it deferential consideration. Id. at 617. Deference is particularly fitting in this case since the Attorney General is responsible for issuing "guidelines, directives and policies concerning appropriate application of the State's criminal laws." O'Shea, 410 N.J. Super. at 382. The adoption of the UFR guidelines and the creation of the form was just such an exercise of the Attorney General's oversight.

The UFR promulgated by the Attorney General is designed to capture information about police conduct, not the subject—the person against whom force was used—in an abbreviated fashion. That the "subject" is a minor, as

opposed to an adult, does not shift the focus of a UFR, disclosure of use of force, in any way. In either instance, the need to record police conduct is the same. Deleting the subject's name adequately protects the anonymity. The remaining information is identity neutral—and provides details that aid in assessing the reasonableness of the officer's conduct: the subject's gender, race, and age; whether the subject was carrying a weapon; whether the subject was injured, killed, or arrested; and the nature of any charges filed against him or her.

Although the parties, like the trial court, cite to the language in O'Shea regarding juvenile parole officers' UFRs, it is not relevant. JJC regulations apply only to UFRs produced by juvenile parole officers and investigators. The UFRs at issue here are filed by county, municipal, or State police; are generally available to the public; and are filed with employers and agencies whose focus is not the arrestee—rather the focus is on the employees' implementation of more broad-based police practices.

The heart of the matter is that a juvenile UFR is not a record pertaining to juveniles charged with delinquency. It is a record pertaining to police conduct.

The legislative history of N.J.S.A. 2A:4A-60, and Governor's statement issued when the statute was enacted, both indicate that the provisions

11

regarding confidentiality were intended to balance the public's right to be informed against the rehabilitation of the juvenile, a balance readily accomplished here by the redaction of the juvenile's name. Senate Judiciary Committee Statement to A. 643 (L. 1982, c. 79); Governor's Conditional Veto Message to A. 1913 (L. 2001, c. 407). Nor does a juvenile UFR fall within the exceptions to availability of government records deemed confidential enumerated within OPRA itself. See N.J.S.A. 47:1A-1. The simple redaction of the subject's name accomplishes the goal of both statutes.

Thus, reviewing the matter de novo, we conclude defendants have not made a clear showing that Rule 5:19-2 and N.J.S.A. 2A:4-60 bar release of juvenile UFRs. Redaction when the subject is a minor preserves confidentiality while advancing OPRA's public policy goals. However, the Attorney General may want to consider the promulgation of a different UFR for use when the subject is a minor, in order to ensure names are not mistakenly released.

We remand the matter for judgment to be entered in accord with this decision. On remand, the court shall address the issue of plaintiff's counsel fee application and costs, both as to the work completed in the Law Division and on appeal.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5779-17T2

# APPENDIX

**_____ POLICE DEPARTMENT**

**USE OF FORCE REPORT**

## A. Incident Information

| Date | Time | Day of Week | Location | INCIDENT NUMBER |
|------|------|-------------|----------|-----------------|
| | | | | |

Type of Incident
☐ Crime in progress     ☐ Domestic     ☐ Other dispute     ☐ Suspicious person     ☐ Traffic stop
☐ Other (specify)

## B. Officer Information

| Name (Last, First, Middle) | | Badge # | Sex | Race | Age | Injured Y / N | Killed Y / N |
|---|---|---|---|---|---|---|---|
| Rank | Duty assignment | Years of service | | On-Duty Y / N | | Uniform Y / N | |

## C1. Subject 1 (List only the person who was the subject of the use of force by the officer listed in Section B.)

| Name (Last, First, Middle) | Sex | Race | Age | Weapon Y / N | Injured Y / N | Killed Y / N |
|---|---|---|---|---|---|---|
| ☐ Under the influence<br>☐ Other unusual condition (specify) | Arrested Y / N | | Charges | | | |

Subject's actions (check all that apply)
☐ Resisted police officer control
☐ Physical threat/attack on officer or another
☐ Threatened/attacked officer or another with blunt object
☐ Threatened/attacked officer or another with knife/cutting object
☐ Threatened/attacked officer or another with motor vehicle
☐ Threatened officer or another with firearm
☐ Fired at officer or another
☐ Other (specify)

Officer's use of force toward this subject (check all that apply)
☐ Compliance hold
☐ Hands/fists
☐ Kicks/feet
☐ Chemical/natural agent
☐ Strike/use baton or other object
☐ Canine
☐ Other (specify)

Firearms Discharge
☐ Intentional
☐ Accidental

Number of Shots Fired _____
Number of Hits _____
[Use 'UNK' if unknown]

## C2. Subject 2 (List only the person who was the subject of the use of force by the officer listed in Section B.)

| Name (Last, First, Middle) | Sex | Race | Age | Weapon Y / N | Injured Y / N | Killed Y / N |
|---|---|---|---|---|---|---|
| ☐ Under the influence<br>☐ Other unusual condition (specify) | Arrested Y / N | | Charges | | | |

Subject's actions (check all that apply)
☐ Resisted police officer control
☐ Physical threat/attack on officer or another
☐ Threatened/attacked officer or another with blunt object
☐ Threatened/attacked officer or another with knife/cutting object
☐ Threatened/attacked officer or another with motor vehicle
☐ Threatened officer or another with firearm
☐ Fired at officer or another
☐ Other (specify)

Officer's use of force toward this subject (check all that apply)
☐ Compliance hold
☐ Hands/fists
☐ Kicks/feet
☐ Chemical/natural agent
☐ Strike/use baton or other object
☐ Canine
☐ Other (specify)

Firearms Discharge
☐ Intentional
☐ Accidental

Number of Shots Fired _____
Number of Hits _____
[Use 'UNK' if unknown]

➤ **If this officer used force against more than two subjects in this incident, attach additional USE OF FORCE REPORTS.**

| Signature: | Date: |
|---|---|
| Print Supervisor Name: | Supervisor Signature: |

7/2001